**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**FILED**

June 26, 2015

Lyle W. Cayce
Clerk

No. 14-10392

HARRIS COUNTY TEXAS; BRAZORIA COUNTY TEXAS, on behalf of themselves and all other similarly situated counties in Texas; DALLAS COUNTY, TEXAS,

Plaintiffs - Appellants

v.

MERSCORP INCORPORATED; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INCORPORATED; BANK OF AMERICA NATIONAL ASSOCIATION,

Defendants - Appellees

Appeals from the United States District Court
for the Northern District of Texas

Before DENNIS, PRADO, and HIGGINSON, Circuit Judges.

STEPHEN A. HIGGINSON, Circuit Judge:

This appeal explores the tension between public and private systems for recording real property interests in Texas. Plaintiffs–Appellants—Dallas, Harris, and Brazoria Counties (collectively, "the Counties")—filed this lawsuit against MERSCORP, Inc., Mortgage Electronic Registration Systems, Inc. ("MERS"), and Bank of America, N.A. (sometimes collectively, "Defendants"). The Counties alleged that Defendants violated Texas Local Government Code § 192.007 and Texas Civil Practice and Remedies Code § 12.002, and alleged

No. 14-10392

claims of fraudulent misrepresentation and unjust enrichment. The district court entered final judgment in favor of Defendants on all claims. We AFFIRM.

## FACTS AND PROCEEDINGS

### I.    MERS

In Texas, when a borrower obtains a home loan, the borrower executes two documents in favor of the lender: (1) a promissory note that creates the borrower's legal obligation to repay the lender, and (2) a deed of trust that grants the lender a lien on the property as security for the debt. To give notice to subsequent purchasers and creditors, the deed of trust may be recorded in the county where the property is located. Despite the legal significance of recording a deed of trust, recording is optional in Texas. *See* Tex. Prop. Code Ann. § 12.001(a).

MERS has changed this recording practice for millions of mortgages. MERSCORP is a privately held company that was created in the mid-1990s. It operates a national electronic registry called MERS that tracks servicing rights and mortgage ownership in the United States.[1] MERS is a membership organization whose members include residential mortgage lenders and servicers, such as Bank of America. When a borrower obtains a home loan from a MERS-member bank, MERS is listed as the "beneficiary" on the deed of trust. The promissory note, however, is executed in favor of the bank. MERS does not loan money, hold the promissory note, service the mortgage, or collect payments. The bank registers the loan on the MERS system and submits the deed of trust to the county clerk to be recorded in county land records. Because MERS is listed as the beneficiary of the deed of trust, the county clerk will ordinarily index MERS in the land-records index as a grantee.

---

[1] Because their corporate identities are not relevant in this appeal, we refer to MERS, MERSCORP, and the MERS system all as "MERS."

2

No. 14-10392

The borrower and the MERS-member lender contractually agree to this arrangement. The deed of trust that the parties execute contains language that states: "MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is a beneficiary under this Security Instrument**." The deed of trust also states that "Borrower understands and agrees that MERS holds only legal title to the [secured] interests granted by Borrower in this Security Instrument" and that "MERS (as nominee for Lender and Lender's successors and assigns) has the right . . . to foreclose and sell the Property."

If the lender later transfers the promissory note (or its interest in the note) to another MERS member, no assignment of the deed of trust is created or recorded because, according to Defendants, MERS remains the nominee for the lender's successors and assigns. Under this theory, because MERS is always listed as the beneficiary on any deed of trust that a MERS member originates, MERS-member banks and entities can repeatedly assign a promissory note secured by that deed of trust to other MERS members without recording those transfers in a public-records office. Because it is the promissory note (not the deed of trust) that is assigned, there is, in theory, nothing to record. These assignments are therefore tracked on the MERS system for priority purposes, but not necessarily in counties' land records. If a promissory note is transferred or negotiated to a non-MERS member, only then is an assignment of the deed of trust created and executed from MERS to the non-MERS member, and the assignee (the new deed of trust beneficiary) files the assignment in the public land records.

In short, MERS streamlines successive sales of mortgages and makes these transfers cheaper. Banks no longer pay county recording fees after a MERS deed of trust is first recorded. Instead, they pay MERS membership and

transaction fees and record interim promissory-note assignments using the MERS system.

## II.    The Texas Recording System

In Texas, county clerks are elected officials responsible for recording instruments that are presented to the clerk's office and maintaining these instruments as "public property." Tex. Const. art. V, § 20; Tex. Prop. Code Ann. § 11.004(a)(1); Tex. Loc. Gov't Code Ann. § 201.005(a). A county clerk must record "within a reasonable time after delivery, any instrument authorized or required to be recorded in that clerk's office that is proved, acknowledged, or sworn to according to law." Tex. Prop. Code Ann. § 11.004(a)(1). "The county clerk shall record, exactly, without delay . . . the contents of each instrument that is filed for recording and that the clerk is authorized to record." Tex. Loc. Gov't Code Ann. § 191.001(c). Each time an instrument is accepted for recording, the county charges a recording fee for the service. Although deeds of trust are instruments that county clerks must record, promissory notes are not.

The Dallas County clerk acknowledged that his employees do not try to determine whether the statements in an instrument are true. If the instrument presented for recording is "normal on its face," the Dallas County clerk or a cashier at the clerk's office will accept it. Indeed, "[i]f a document covered by a filing statute is regular on its face, the clerk may not refuse to file it based on extraneous facts." Tex. Att'y Gen. Op. LO98-016, at 3. By statute, however, a clerk "shall" refrain from recording a document that he "believe[s] in good faith" creates a fraudulent lien so that he can consult the county or district attorney. Tex. Gov't Code Ann. § 51.901(d). Dallas County did not use this mechanism to investigate whether a MERS deed of trust is fraudulent. Instead, it filed this lawsuit and continued accepting MERS deeds of trust for recording.

No. 14-10392

## III.  Procedural History

Dallas County originally filed this lawsuit in state court, and Defendants removed the case to federal court. Once removed, Dallas County amended its complaint to add class-action allegations,[2] and Harris and Brazoria Counties joined as plaintiffs. In May 2012, the Counties filed a Second Amended Complaint.

The Counties' claims are based on two overarching theories. First, the Counties allege that Bank of America and MERS fraudulently listed MERS as the beneficiary of deeds of trust that were recorded in the Counties' land records. Second, the Counties allege that Defendants are required to record assignments of a deed of trust every time a MERS-member lender transfers its interest in a related promissory note to another MERS member. Based on these two theories, the Counties assert four claims that are relevant in this appeal[3]: (1) violation of Texas Local Government Code § 192.007, (2) violation of Texas Civil Practice and Remedies Code § 12.002, (3) fraudulent misrepresentation, and (4) unjust enrichment. The Counties seek monetary damages, exemplary damages, and declaratory and injunctive relief.

On May 23, 2012, the district court dismissed the Counties' claim under section 12.002. After this dismissal, discovery continued on the Counties' remaining claims. Harris and Brazoria Counties ultimately settled most of their claims, leaving only their request for declaratory relief under section 192.007. The Dallas County Commissioners Court never voted to approve this settlement, so Dallas County's remaining claims moved forward pending

---

[2] The district court struck the class allegations, and the Counties do not appeal that ruling.

[3] The Counties also asserted claims for negligent misrepresentation, grossly negligent misrepresentation, negligent undertaking, grossly negligent undertaking, negligence per se, gross negligence per se, and conspiracy. The dismissal of these claims was not raised on appeal.

summary judgment. Finally, in two separate orders in November 2013 and March 2014, the district court entered summary judgment on all of the remaining claims, including Dallas County's claims for fraudulent misrepresentation and unjust enrichment, and Harris and Brazoria Counties' section 192.007 claim. The district court entered final judgment in favor of Defendants on all claims. This timely appeal followed.

## STANDARDS OF REVIEW

This court reviews a district court's dismissal under Federal Rule of Civil Procedure 12(b)(6) de novo, "accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiff." *Toy v. Holder*, 714 F.3d 881, 883 (5th Cir. 2013) (internal quotation marks omitted). This court also reviews a district court's grant of summary judgment de novo, applying the same standards as the district court. *Rogers v. Bromac Title Servs., L.L.C.*, 755 F.3d 347, 350 (5th Cir. 2014). We may affirm a district court's Rule 12(b)(6) dismissal or grant of summary judgment on any grounds raised below and supported by the record. *Id.*; *Raj v. La. State Univ.*, 714 F.3d 322, 330 (5th Cir. 2013).

## DISCUSSION

Before this court, Harris and Brazoria Counties appeal the district court's grant of summary judgment on their claim seeking a declaration that Texas Local Government Code § 192.007 imposed a duty to record assignments of deeds of trust when the interests in related promissory notes are transferred. Dallas County separately appeals the district court's dismissal of its Texas Civil Practice and Remedies Code § 12.002 claim and the grant of summary judgment on its claims for fraudulent misrepresentation and unjust enrichment. Texas substantive law and federal procedural law apply to these state-law claims. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). The Texas Supreme Court, however, has not addressed any of these issues in the

context of MERS, so we must make an "*Erie* guess" and "determine as best [we] can" what the Supreme Court of Texas would decide. *United States v. Marshall*, 771 F.3d 854, 878 (5th Cir. 2014) (internal quotation marks and citation omitted). We discuss each claim in turn.

## I.      Section 192.007

Only Harris and Brazoria Counties appeal the entry of summary judgment on the section 192.007 claim. This claim presents two independent issues. The district court ruled on both. First, the district court held that it had no authority to grant the requested relief under the Declaratory Judgment Act, 28 U.S.C. § 2201, because the Texas Legislature did not create a private right of action to enforce section 192.007. Second, the district court also held that even if there were a right of action, section 192.007 does not impose a duty to create and record assignments of deeds of trust when an interest in the related promissory note is transferred. We agree with the district court's resolution of both issues.

### A. Private Right of Action

We must first address the threshold issue of whether the Counties have identified a private right of action entitling them to declaratory relief under section 192.007. The Counties argue that if there is an actual controversy, then a declaratory action is automatically justiciable. In raising this argument, the Counties elide three basic concepts: jurisdiction, right of action, and remedy.

To raise a claim in federal court, plaintiffs must demonstrate both that a federal court will have jurisdiction over their claim, and also that they (the plaintiffs) have a right of action to initiate that claim. In other words, establishing the court's jurisdiction and the litigants' right of action are two requirements that must be satisfied independently. *See Nat'l R.R. Passenger Corp. v. Nat'l Ass'n of R.R. Passengers*, 414 U.S. 453, 455–56 (1974) (recognizing that whether a private right of action exists and whether a federal

court has jurisdiction are two separate threshold questions). Within this framework, the issue of party standing factors into the court's jurisdictional limits under Article III of the Constitution. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) ("[T]he core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III."); *see also Bond v. United States*, 131 S. Ct. 2355, 2362 (2011) (noting that "cause of action" and "standing" are "distinct concepts"); 13A Charles Alan Wright et al., *Federal Practice & Procedure* § 3531.6 (3d ed.) (noting the "general tendency to confuse cause-of-action concepts with standing").

Here, the district court had diversity jurisdiction over the Counties' state-law claims. *See* 28 U.S.C. § 1332. There was also an "actual controversy" between the parties over how to interpret section 192.007. The Counties therefore had Article III standing, and the district court had jurisdiction over their section 192.007 claim. The Counties nevertheless still have to show that they had a right of action to bring that claim in the first place. The Counties have failed to satisfy that requirement.

The Counties do not contend that section 192.007 itself creates a private right of action. Instead, the Counties believe that the Declaratory Judgment Act provides a right to relief because there is an "actual controversy." This argument is flawed because the Declaratory Judgment Act alone does not create a federal cause of action. "In a case of actual controversy within its jurisdiction," the Declaratory Judgment Act only authorizes a federal court to "declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a). In other words, the Act "enlarged the range of remedies available in the federal courts," but it did not create a new right to seek those remedies. *Skelly Oil Co. v. Phillips Petrol. Co.*, 339 U.S. 667, 671 (1950); *see Okpalobi v. Foster*, 244 F.3d 405, 423 n.31 (5th Cir. 2001) ("[T]he law makes clear that—although the Declaratory Judgment Act provides a

No. 14-10392

*remedy* different from an injunction—it does not provide an additional cause of action with respect to the underlying claim."); *Tex. Med. Ass'n v. Aetna Life Ins. Co.*, 80 F.3d 153, 158–59 (5th Cir. 1996) (holding that plaintiffs were not entitled to a declaratory judgment under the Texas Uniform Declaratory Judgment Act because they did not first identify a cause of action under the state statute that they were trying to enforce).

Finally, the Counties also try to identify a cause of action in the advisory committee notes of Federal Rule of Civil Procedure 57. The notes state: "Written instruments, including ordinances and statutes, may be construed before or after breach at the petition of a properly interested party, process being served on the private parties or public officials interested." Fed. R. Civ. P. 57 advisory committee's note. Again, this argument fails because this note and Rule 57, like the Declaratory Judgment Act itself, do not create a substantive right to pursue relief in federal court. Instead, they only provide a new remedy if it "is otherwise appropriate." Fed. R. Civ. P. 57; *see also* 10B Wright, *supra*, § 2754 ("The [Declaratory Judgment] Act and Rule 57 are not jurisdictional. They are procedural only and merely grant authority to the courts to use a new remedy in cases over which they otherwise have jurisdiction.").

Because the Declaratory Judgment Act is procedural and does not create an independent private right of action, the district court's grant of summary judgment was therefore proper.

**B. Duty to Record**

Although Harris and Brazoria Counties' section 192.007 claim independently fails because the Counties do not have a private right of action to seek declaratory relief under the statute, deciding whether section 192.007 creates a duty to record is nevertheless central to resolving Dallas County's

9

other claims. If there is no duty to record assignments, Dallas County's claims must also fail.

The Counties argue that once a deed of trust is recorded, section 192.007 requires that any and all assignments of that deed of trust must be recorded. The Counties also contend that every time the promissory note that is secured by that deed of trust is transferred or negotiated, a deed-of-trust assignment must also be created and recorded.

As primary support for these arguments, the Counties emphasize that the statute uses the word "must." To be sure, the Counties are correct to orient their analysis on the plain language of the statute. "When we interpret a Texas statute, we follow the same rules of construction that a Texas court would apply—and under Texas law the starting point of our analysis is the plain language of the statute." *Forte v. Wal-Mart Stores, Inc.*, 780 F.3d 272, 277 (5th Cir. 2015) (internal quotation marks and citation omitted). Section 192.007 states:

> (a) To release, transfer, assign, or take another action relating to an instrument that is filed, registered, or recorded in the office of the county clerk, a person *must* file, register, or record another instrument relating to the action in the same manner as the original instrument was required to be filed, registered, or recorded.
>
> (b) An entry, including a marginal entry, may not be made on a previously made record or index to indicate the new action.

Tex. Loc. Gov't Code Ann. § 192.007 (emphasis added). The central question is therefore: "must" what?

The Counties read the statute to require that "a person must . . . record another instrument." In support of this interpretation, the Counties emphasize that the statute is directed at "a person," instead of at a county clerk specifically. Therefore, the Counties argue, MERS must record all assignments.

No. 14-10392

The Counties' reading of the statute is incomplete. Read more completely, subsection (a) states that if an "original instrument was required to be . . . recorded" in a particular manner, later documents "relating to" the original document must be recorded "in the same manner." *Id.* § 192.007(a). The statute does not state that "a person must . . . record another instrument," full stop. Subsection (a) dictates the "manner" in which subsequent documents must be recorded; it does not impose an affirmative duty to record those instruments in the first place.[4]

This interpretation of subsection (a) is consistent with subsection (b). *See Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 1, 19 (Tex. 2007) ("In determining [a statute's] meaning, we must also consider the statute as a whole and construe it in a manner which harmonizes all of its various provisions."). Subsection (b) states: "An entry, including a marginal entry, may not be made on a previously made record or index to indicate the new action." Tex. Loc. Gov't Code Ann. § 192.007(b). Subsection (a)'s requirement that "another instrument" be recorded "in the same manner as the original instrument" is consistent with subsection (b)'s instruction not to make notations in the margins of existing records.[5] Both subsections focus on the manner of recording.

---

[4] Some state legislatures have imposed a duty to record. *See, e.g.*, Ky. Rev. Stat. Ann. § 382.360(3); Minn. Stat. Ann. § 580.02(3). But the Texas Legislature has not.

[5] Defendants contend that these provisions were adopted when county clerks began microfilming land records. Separate instruments had to be filed because clerks could not write on microfilms. The Counties cite conflicting testimony from a county clerk who testified in 2012 about her involvement in drafting section 192.007, which she contends imposes a recording requirement. This testimony, however, is not relevant because the county clerk was not a member of the legislature that drafted the original provision and she made all of these statements *after* this lawsuit was filed, not *before* the provision was adopted. *See In re Sullivan*, 157 S.W.3d 911, 918 (Tex. App. 2005) ("[C]omments by nonlegislators, made after the Texas Legislature enacted the statute in question . . . are not legislative history, nor are they otherwise relevant to the statutory-construction issue at hand.").

No. 14-10392

Next, the placement of section 192.007 in Texas's statutory code supports that it was a procedural directive to county clerks, not a recording mandate to the public. As the district court noted, the Texas Legislature placed section 192.007 in the Local Government Code—which governs the operation of county and municipal governments—not the Property Code—which governs the public's real-property rights and duties. Reinforcing this point, chapter 192, entitled "Instruments to be Recorded *by Counties*" (emphasis added), governs which instruments clerks must record and how clerks are required to record them. *See, e.g., id.* § 192.001 ("The county clerk shall record each deed . . . that is required or permitted by law to be recorded."), § 192.002(a) ("The county clerk shall record [military discharge records]."), § 192.006(b) ("The county clerk shall keep the records of the county court properly indexed and arranged."). None of these provisions is directed to the public.

Significantly, in dicta and in unpublished opinions, this court has already explained that it discerns no duty to record in the text of section 192.007. *See Reinagel v. Deutsche Bank Nat'l Trust Co.*, 735 F.3d 220, 228 n.27 (5th Cir. 2013) ("[T]his obscure provision has never been cited in a state court decision and is best read as a procedural directive to county clerks, not as a prerequisite to the validity of assignments."); *see also Rojas v. Wells Fargo Bank, N.A.*, 571 F. App'x 274, 279 (5th Cir. 2014) (per curiam) (quoting *Reinagel*, 735 F.3d at 228 n.27); *Green v. JP Morgan Chase Bank, N.A.*, 562 F. App'x 238, 241 (5th Cir. 2014) (per curiam) (same); *Hudson v. JP Morgan Chase Bank, N.A.*, 541 F. App'x 380, 384 (5th Cir. 2013) (per curiam) ("[Section] 192.007 does not impose upon [a lender] a duty to record the assignment of the deed of trust."); *cf. KCB Equities, Inc. v. HSBC Bank USA, Nat'l Ass'n*, No. 05-10-01648-CV, 2012 WL 1985899, at *2 (Tex. App. June 4, 2012) (recognizing that there is no legal authority that requires recording promissory-note assignments). Even though all of these cases involved foreclosure disputes, not

12

recording disputes, these cases are persuasive authority supporting our holding that section 192.007 does not impose a duty to record on the public. *See United States v. Castellon-Aragon*, 772 F.3d 1023, 1025 (5th Cir. 2014); *Ayoub v. I.N.S.*, 222 F.3d 214, 215 (5th Cir. 2000) (per curiam).

This interpretation is also consistent with Texas property law generally. Texas's recording system is a permissive, not a mandatory, system: "instrument[s] concerning real or personal property *may* be recorded." Tex. Prop. Code Ann. § 12.001(a) (emphasis added). Unrecorded instruments relating to real property remain valid between the parties; however, the holder of the instrument may lose priority. *See id.* § 13.001(b); *see also Denson v. First Bank & Trust of Cleveland*, 728 S.W.2d 876, 877 (Tex. App. 1987) ("[I]t is a well-reasoned rule of law that neither the acknowledgment nor recordation of a deed of trust is necessary to make it a valid and binding obligation between the immediate parties thereto."). If an original document is not required to be recorded, it would be inconsistent to hold that subsequent documents related to the original must be recorded.

Finally, this interpretation does not promote unperfected security interests or run afoul of the "split-the-note" theory, as the Counties contend. Under the split-the-note theory, transferring a note without the deed of trust "splits" the note from the deed and renders them both null. *See Martins v. BAC Home Loans Servicing, L.P.*, 722 F.3d 249, 254 (5th Cir. 2013). "In order to foreclose, the [split-the-note] theory goes, a party must hold both the note and the deed of trust." *Id.* But contrary to this theory, the Texas Supreme Court has held that the sale of a promissory note transfers the rights in the deed of trust to the new noteholder regardless of whether the deed is actually transferred as well. *See Pope v. Beauchamp*, 219 S.W. 447, 449 (Tex. 1920) (explaining that if an "executed contract" or promissory note is transferred, "the mortgage [deed of trust] passes with it, ipso facto, without assignment in

No. 14-10392

words, and, by the weight of authority, with the properties of the principal instrument itself" (citation omitted)). In other words, if the note is assigned, then the new noteholder has the right to foreclose on the property identified in the deed of trust that secures the note, whether or not the noteholder also possesses or is assigned the deed of trust. The beneficiary of the deed of trust likewise has the right to foreclose. Thus, in Texas, the holder of the promissory note and the beneficiary of the deed of trust can be two separate individuals or entities.

More recently, this court, interpreting Texas law, has explicitly rejected the split-the-note theory in the context of MERS transfers.[6] *See Martins*, 722 F.3d at 254. In *Martins*, we emphasized that Texas courts view the note and deed as separate obligations. *See id.* at 255. Thus, in Texas, a deed of trust gives both the lender (here, Bank of America) and the beneficiary (here, MERS) "the right to invoke the power of sale, even though it would not be possible for both to hold the note." *Id.* (internal quotation marks and citation omitted). Transferring a promissory note among MERS members does not render the related deed of trust void, even if MERS, and not a MERS-member bank, is the beneficiary of the deed. As a result, MERS does not have to re-record a deed of trust to maintain a perfected security interest in the property. The Counties do not cite *Martins* in their briefs or make any effort to distinguish it.

In sum, section 192.007's plain text, its placement in Texas's statutory code, and basic Texas property law confirm that section 192.007 is a procedural directive to county clerks about how to record subsequent documents. It is not an affirmative mandate to the public that deed-of-trust beneficiaries must

---

[6] Although there is variation on this issue state by state, Texas is not alone in its rejection of the split-the-note theory. *See, e.g.*, *In re Mortg. Elec. Registration Sys., Inc.*, 754 F.3d 772, 786 (9th Cir. 2014) (interpreting Nevada law); *Macon Cnty., Ill. v. MERSCORP, Inc.*, 742 F.3d 711, 712 (7th Cir. 2014) (interpreting Illinois law); *Culhane v. Aurora Loan Servs. of Neb.*, 708 F.3d 282, 292 (1st Cir. 2013) (interpreting Massachusetts law).

14

record assignments of either the deed of trust itself or the related promissory note. We therefore elevate *Reinagel*'s dictum to the holding of this case: section 192.007 imposes no duty to record.

## II.    Section 12.002

Only Dallas County challenges the dismissal of the remaining claims raised on appeal. First, Dallas County contends that the district court erred by dismissing its fraudulent-lien claim. Texas Civil Practice and Remedies Code § 12.002 authorizes statutory or actual damages for persons injured by fraudulent liens. A section 12.002 claim has three elements:

> [T]he defendant (1) made, presented, or used a document with knowledge that it was a "fraudulent lien or claim against real or personal property or an interest in real or personal property," (2) intended that the document be given legal effect, and (3) intended to cause the plaintiff physical injury, financial injury, or mental anguish.

*Henning v. OneWest Bank FSB*, 405 S.W.3d 950, 964 (Tex. App. 2013) (quoting Tex. Civ. Prac. & Rem. Code Ann. § 12.002(a)). The party asserting a claim under section 12.002 has the burden of proof. *See James v. Calkins*, 446 S.W.3d 135, 149 (Tex. App. 2014).

The district court dismissed Dallas County's section 12.002 claim under Rule 12(b)(6), holding that Dallas County failed to plead the third element of the claim.[7] The district court emphasized that, instead of alleging that Defendants intended to cause a cognizable financial injury to the County, Dallas County only alleged that Defendants intended to avoid the costs and filing fees associated with filing, registering, or recording subsequent documents. The district court further reasoned that Dallas County could not

---

[7] Because the district court dismissed this claim under Rule 12(b)(6), we limit our analysis to the allegations in the Counties' Second Amended Complaint—the operative complaint when the district court ruled on the motion to dismiss.

suffer injury under section 12.002 until someone filed a document. The district court therefore concluded that Defendants' choice not to file a document did not injure the County.

The allegations in the Second Amended Complaint support the district court's conclusion. Dallas County alleged that Defendants "intended . . . to financially injure Plaintiffs . . . by avoiding the costs and filing fees associated with filing, registering, or recording subsequent releases, transfers, assignments, or other action relating to such instrument as required by Texas law." In other words, Dallas County alleged that it was injured by fraudulent MERS deeds of trust because they allowed Defendants to avoid filing future assignment documents in the county records.

Dallas County's alleged injury is mistakenly premised on the argument that Texas law imposes a duty to record subsequent assignments. But as we resolved above, Defendants were not required to record assignments if a MERS-member sold its interest in a promissory note secured by a MERS deed of trust. Defendants were always entitled to choose not to make future filings, regardless of what filings they had made in the past. Because recording the original document is optional, it would defy logic and the statutory text to make recording future assignments mandatory.

The conclusion then follows that if Defendants can always choose not to record assignments, they could not have intended to injure Dallas County. Moreover, governmental entities are not entitled to compensation unless they first perform a public service. *See Maverick Cnty. Water Control & Improvement Dist. #1 v. State,* 456 S.W.2d 204, 207 (Tex. Civ. App. 1970) (adopting the view that a county agency could not assess a fee for a service "neither received nor requested"); *Carpenter v. Arroyo-Colo. Nav. Dist. of Cameron & Willacy Cntys.,* 111 S.W.2d 822, 823 (Tex. Civ. App. 1937) (holding that a county commissioner could not receive compensation for services he did

not perform); *Earnest v. Couch*, 81 S.W.2d 761, 762 (Tex. Civ. App. 1935) (holding that county tax assessor was not entitled to a fee when he did "not . . . perform[] that duty, or actually earn[] that fee"). Because Dallas County was not entitled to a fee in the first place, it could not have suffered a financial injury.

In reply, Dallas County argues that Defendants have conflated the County's authority to charge a fee and its entitlement to damages. According to Dallas County, its authority to charge fees is irrelevant because it does not have to prove actual damages under the statute. *See Vanderbilt Mortg. & Fin., Inc. v. Flores*, 692 F.3d 358, 370, 372 (5th Cir. 2012) (holding that plaintiffs are still entitled to pursue section 12.002 claims even when they have not alleged actual damages). The problem, however, is not that the County failed to allege actual *damages*, but that it failed to allege a cognizable *injury*. The issue of how damages should be assessed—whether statutory damages or actual damages—is only reached if there is a violation of the statute. *See* Tex. Civ. Prac. & Rem. Code Ann. § 12.002(b). But because there is no duty to record, the Defendants did not violate the statute because they could not have intended to injure the County by avoiding future filing fees. Dallas County therefore failed to state a claim under section 12.002.[8]

### III.    Fraudulent Misrepresentation

Dallas County's common law claim for fraudulent misrepresentation similarly fails. This claim is based on the provision in MERS deeds of trust that states: "**MERS is a beneficiary under this Security Instrument**." Dallas County contends that this statement is false because MERS has no interest in the debt or the promissory note secured by the deed of trust and

---

[8] Because we can resolve this issue on the third element of the claim, we need not address whether Dallas County identified a private right of action to enforce section 12.002 in the first place.

therefore cannot be the beneficiary of the deed of trust. Dallas County further believes that it is injured by this alleged misrepresentation because it corrupts the County's land records.

Under Texas law, a plaintiff seeking to prevail on a fraudulent-misrepresentation claim must prove: (1) a material misrepresentation; (2) the representation was false; (3) the defendant either knew the representation was false or recklessly asserted it without knowledge of its truth; (4) the defendant intended that the plaintiff should act upon the representation; (5) the plaintiff acted in reliance on the representation; and (6) the plaintiff was injured as a result. *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 337 (Tex. 2011). The district court granted summary judgment on the fraudulent-misrepresentation claim, focusing on the fifth and sixth elements: reliance and injury. We agree with the district court's conclusion on these elements and also discuss whether the Defendants even made a false representation in the first place.

**A. False Representation**

First, designating MERS as a "beneficiary" of the deeds of trust was not a false representation.[9] As a matter of basic contract law, MERS is a beneficiary. "Texas courts have consistently held that the terms set out in a deed of trust must be strictly followed." *Univ. Sav. Ass'n v. Springwoods Shopping Ctr.*, 644 S.W.2d 705, 706 (Tex. 1982); *see also Mathis v. DCR Mortg. III Sub I, L.L.C.*, 389 S.W.3d 494, 507 (Tex. App. 2012) ("The rules of interpretation that apply to contracts also apply to notes and deeds of trust."). Here, MERS is explicitly designated as a beneficiary in the deeds of trust. The

---

[9] Dallas County also argues that MERS falsely identified itself as the "lender," the "holder of note and lien," and the "payee." Even assuming these representations are false, Dallas County still has failed to raise a genuine issue of material fact on its fraudulent-misrepresentation claim because it has failed to identify a fact issue on the reliance and injury elements of the claim, as discussed below.

borrowers who executed these deeds agreed to this arrangement. *See Athey v. Mortg. Elec. Registration Sys., Inc.*, 314 S.W.3d 161, 162, 165–66 (Tex. App. 2010) (affirming that MERS was the beneficiary of a deed of trust, even though it did not hold the promissory note that the deed secured, when the deed of trust named MERS the beneficiary).

Resisting this conclusion, Dallas County contends that, despite the language in the MERS deeds of trust, MERS knew that it was not a beneficiary because it has admitted that it acts only in a nominee capacity and has no interest in the debt or promissory note secured by the deed of trust. It is true that the deeds of trust state both that "MERS is a beneficiary under this Security Instrument," and also that MERS acts "solely as a nominee for Lender and Lender's successors and assigns." But as discussed above, nothing is legally inconsistent with this arrangement because Texas courts do not apply the split-the-note theory. "The duality of the lien and note means that the beneficiary of the lien can be different from the holder of the note." *Wiley v. Deutsche Bank Nat'l Trust Co.*, 539 F. App'x 533, 536 (5th Cir. 2013) (per curiam). The borrower agrees to listing MERS as beneficiary of the deed of trust. MERS and the lender, in turn, agree that MERS will serve as the lender's nominee. In other words, because of the duality of the note and lien, it is possible that MERS could simultaneously be the principal of the lien and the agent of the lender who holds the note. Thus, in Texas, it is not inconsistent for the deed of trust to label MERS both as a "nominee" and as a "beneficiary."

Apart from the language in the deeds of trust themselves, the Texas Legislature has also granted MERS authority to serve as beneficiaries in deeds of trust. The Texas Legislature amended chapter 51 of the Texas Property Code—the chapter governing foreclosure proceedings—to include "book entry system" in the definition of "mortgagee," thus reinforcing that MERS has the right to file foreclosure actions. *See* Tex. Prop. Code Ann. § 51.0001(1), (4)(B);

*see also L'Amoreaux v. Wells Fargo Bank, N.A.*, 755 F.3d 748, 750 (5th Cir. 2014) (per curiam); *Farkas v. GMAC Mortg., L.L.C.*, 737 F.3d 338, 342 (5th Cir. 2013) (per curiam); *Martins*, 722 F.3d at 255; *Athey*, 314 S.W.3d at 166. It is true that, as Amicus Bexar County points out, this definition only applies "[i]n . . . chapter [51]." But this limitation does not suggest that the Texas Legislature simultaneously intended to eliminate MERS's right to serve as beneficiary of deeds of trust. Indeed, it would be inconsistent to assert that, although MERS is statutorily authorized to file foreclosure actions, it cannot at the same time record its interest in deeds of trust, which give it the right to foreclose in the first place. In short, Defendants have made no false representation by presenting deeds of trust that designate MERS as beneficiary.

### B. Reliance

Next, as the district court held, Dallas County also offered no evidence that it detrimentally relied on the allegedly false MERS deeds of trust. The Dallas County clerk testified that county clerks and their cashiers will accept a deed of trust for recording as long as it appears "normal on its face." Then, if MERS is listed as the beneficiary, clerks file the deed of trust in the index with MERS listed as the grantee. As a result, Dallas County believes reliance "is inherent in the very ministerial nature of recording deed instruments" because the County "relies upon filers to truthfully and accurately represent each party's interests."

This type of reliance is not reliance sufficient to create an issue of fact on a fraud claim. Reliance requires a change in position based on an alleged misrepresentation. *See Coffel v. Stryker Corp.*, 284 F.3d 625, 636 (5th Cir. 2002) ("[F]raud does not exist unless the defendant's representations induced the plaintiff to take a particular course of action." (citing *Johnson & Johnson Med., Inc. v. Sanchez*, 924 S.W.2d 925, 930 (Tex. 1996))). "'[D]etrimental

reliance does not consist of the performance of pre-existing obligations that are properly compensated.'" *Thanksgiving Tower Partners v. Anros Thanksgiving Partners*, 64 F.3d 227, 233 (5th Cir. 1995) (quoting *Regent Int'l Hotels, Ltd. v. Las Colinas Hotels Corp.*, 704 S.W.2d 101, 105 (Tex. App. 1985)). Here, county clerks receive a fee for fulfilling their statutory obligation of recording documents exactly as they are presented. *See* Tex. Loc. Gov't Code Ann. § 191.001(c); Tex. Prop. Code Ann. § 11.004(a)(1), (b); *see also Cobra Oil & Gas Corp. v. Sadler*, 447 S.W.2d 887, 896 (Tex. 1968) ("The duties of a county clerk or other recorder of public documents are ministerial in nature."). More to the point, what the county clerk does here—index a MERS deed of trust with MERS as grantee—is required by law. *See* Tex. Loc. Gov't Code Ann. § 193.002(b); *id.* § 193.009 (stating that instruments "must be alphabetically indexed and cross-indexed in the indexes to that official public record *under the names of the parties identified in the instrument*" (emphasis added)); *see also* Att'y Gen. Op. GA-0702, at 1.

### C. Injury

Finally, the district court also correctly held that there was no genuine issue of fact as to whether Dallas County suffered an injury arising from any reliance on the purported misrepresentation. "To recover for fraud, the plaintiff must plead and prove that a *pecuniary loss* was suffered as a result of reliance upon a false representation." *Coffel*, 284 F.3d at 637 (emphasis added) (citing *DiGrazia v. Atl. Mut. Ins. Co.*, 944 S.W.2d 731, 735 (Tex. App. 1997)). The district court first reasoned that Dallas County chiefly complained of lost recording fees, which, as it held earlier, were not an actionable pecuniary loss. The district court then rejected the County's alternative theory that it was harmed because the allegedly false deeds corrupted the land records. The district court emphasized that the County could not be injured on this basis because it had no ownership interest in the land records themselves and also

because there was no evidence that the records had been corrupted. In particular, it noted that there was no evidence that the county clerk had received any complaints or suffered harm because of MERS deeds of trust being recorded.

Dallas County does not appeal the district court's first rationale: that lost recording fees were not a compensable injury. Indeed, as discussed above, the government cannot recover a fee unless it first provides a service. And here, every time Dallas County recorded a MERS deed of trust, Dallas County received a fee for that service. Thus, based on fees alone, there is no pecuniary loss.

Next, Dallas County continues to argue on appeal that the alleged misrepresentation corrupted county deed records.[10] According to Dallas County, it has an interest in preserving the integrity of these records primarily because the county clerk is the records custodian for the County. *See Hooten v. Enriquez*, 863 S.W.2d 522, 530 (Tex. App. 1993). The reliability of the records is diminished, says Dallas County, because MERS filings are "opaque and inaccurate."

The County, however, does not have an ownership interest in these records. Instead, it has a duty to maintain the records, which are, in turn, considered "public property." Tex. Loc. Gov't Code Ann. § 201.005(a); *cf. Nobles v. Marcus*, 533 S.W.2d 923, 927 (Tex. 1976) (recognizing that only a defrauded party can maintain a suit to set aside a fraudulent deed). Moreover, even

---

[10] Dallas County also argues that it is injured by MERS filings because it will have to remediate the records so that the correct entities are listed as having an interest in the property. Because Dallas County raised this argument for the first time in its motion for reconsideration in the district court, we will not consider it. *See U.S. Bank Nat'l Ass'n v. Verizon Commc'ns, Inc.*, 761 F.3d 409, 425 (5th Cir. 2014) ("This court will typically not consider an issue or a new argument raised for the first time in a motion for reconsideration in the district court.").

setting aside the issue of ownership, there is nothing in the record that suggests that the land records are inaccurate. The clerk's duty is to record documents "exactly" as they are filed. Tex. Loc. Gov't Code Ann. § 191.001(c). If MERS is listed as a grantee for certain deeds of trust, that is because it is identified on those deeds as a beneficiary. Therefore, contrary to Dallas County's argument, the land records are actually accurate because they are indexing these deeds under MERS's name. Whether MERS actually has a legal right related to the property identified in the deed of trust is a different issue, independent from the issue of accurate land records. Therefore, because Dallas County was not injured by an alleged fraud, Dallas County's fraudulent misrepresentation must fail.

## IV.   Unjust Enrichment

Finally, the district court also granted summary judgment on Dallas County's unjust-enrichment claim. Texas courts recognize that "unjust enrichment is not an independent claim; rather it is a theory of recovery that characterizes the result of a failure to make restitution of benefits either wrongfully or passively received under circumstances which give rise to an implied or quasi-contractual obligation to repay." *McCullough v. Scarbrough, Medlin & Assocs., Inc.*, 435 S.W.3d 871, 891 (Tex. App. 2014) (internal quotation marks and citation omitted). "A party may recover under the unjust enrichment theory when one person has obtained a benefit from another by fraud, duress, or the taking of an undue advantage." *Heldenfels Bros. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992).

In granting summary judgment, the district court reasoned that the unjust-enrichment claim must fail because any benefit from recording a mortgage was derived not from the county clerk, but from Texas law recognizing lien priority. This conclusion was correct. First, the Texas Legislature, not Dallas County, provided the "benefit" of lien priority. Lien

No. 14-10392

priority in Texas is determined by statute. If the beneficiary of a lien records a deed of trust, that beneficiary has priority over any other interests that were not previously recorded. *See* Tex. Prop. Code Ann. §§ 13.001(a), 13.002.

On appeal, Dallas County argues that the benefit of first priority never would have accrued if the original deed of trust had not been recorded in the Dallas County land records. Defendants, however, paid for that benefit. Next, Dallas County also argues that because Defendants do not file deed-of-trust assignments when MERS members transfer promissory notes, Defendants were unjustly enriched by avoiding the filing fees for recording these assignments. Again though, because there is no duty to record deeds of trust or assignments under Texas law, Defendants were entitled to make this choice. Their conduct therefore was not unjust.[11] We therefore affirm summary judgment on Dallas County's unjust-enrichment claim.

## CONCLUSION

For these reasons, we AFFIRM the judgment of the district court, dismissing all of the Counties' claims.

---

[11] The Sixth, Seventh, and Eighth Circuits have reached similar conclusions when dealing with unjust-enrichment claims that counties and county clerks have filed against MERS. *See Cnty. of Ramsey v. MERSCORP Holdings, Inc.*, 776 F.3d 947, 950–51 (8th Cir. 2014); *Macon Cnty., Ill.*, 742 F.3d at 713–14; *Brown v. Mortg. Elec. Registration Sys., Inc.*, 738 F.3d 926, 934–35 (8th Cir. 2013); *Christian Cnty. Clerk ex rel. Kem v. Mortg. Elec. Registration Sys., Inc.*, 515 F. App'x 451, 459–60 (6th Cir. 2013).