# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

August 16, 2019

No. 18-40636

Lyle W. Cayce
Clerk

ESTELLA MARTINEZ, Individually and as sole heirs of the estate of Claudia Martinez, Deceased; ROGELIO MARTINEZ, Individually and as sole heirs of the estate of Claudia Martinez, Deceased; JAMAL SAIH, Individually and as sole heirs of the estate of Claudia Martinez, Deceased; OLIVIA LONGORIA; ROGELIO LONGORIA,

　　　　Plaintiffs - Appellants

v.

WALGREEN COMPANY,

　　　　Defendant - Appellee

―――――――――――

Appeal from the United States District Court
for the Southern District of Texas

―――――――――――

Before HIGGINBOTHAM, JONES, and COSTA, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

This case requires us to decide whether, under Texas law, a pharmacy owes a duty of care to third parties injured on the road by a customer who was negligently given someone else's prescription. Concluding that the Texas Supreme Court would not recognize this tort duty, we affirm the district court's grant of summary judgment to Walgreens.

No. 18-40636

## I

Two sets of plaintiffs, Claudia Martinez's next of kin and Olivia and Rogelio Longoria, allege that a Walgreens pharmacy negligently gave Elias Gamboa Mesa a medication prescribed for another patient rather than the one associated with his own prescription. Walgreens allegedly gave Gamboa glyburide metformin, a medication used to treat diabetes—but which can cause hypoglycemia, or low blood pressure, in non-diabetics. Symptoms include cognitive impairment, behavioral changes, and psychomotor abnormalities.

The plaintiffs allege that ingesting the drug caused Gamboa to experience severe hypoglycemia and drive erratically on a road in McAllen, Texas. First, he rear-ended the Longorias' car. Then, failing to stop after the first collision, he crossed the center lane and crashed head-on into Martinez's car, fatally injuring her. Finally, Gamboa struck three other vehicles in an intersection before his own vehicle burst into flames. After Gamboa died from his injuries, an autopsy revealed that he had detectable amounts of glyburide metformin in his system at the time of the accident.

Gamboa's son sued Walgreens in Texas state court and Walgreens removed to federal court. The Martinez plaintiffs and the Longorias moved to intervene; while the motion was pending, they filed this lawsuit in the same court. Gamboa's son and Walgreens ultimately settled, leaving only this lawsuit between the injured third parties and Walgreens.

On Walgreens's motion for summary judgment, the district court made an *Erie* guess that under Texas law, a medical professional such as a pharmacist does not owe a duty of care to "unconnected" third parties like Martinez and the Longorias. It also rejected the plaintiffs' argument that Walgreens was liable under a theory of negligence per se. Concluding that the plaintiffs had no viable theory of liability, it granted Walgreens summary judgment. The plaintiffs now urge us to reverse the district court's

2

No. 18-40636

determination that under Texas law, Walgreens did not owe them a duty of care—or, alternatively, to certify this issue to the Texas Supreme Court.

## II

We review the district court's grant of summary judgment de novo, "viewing the evidence in the light most favorable to the non-moving [parties] and drawing all reasonable inferences in the nonmovant[s'] favor."[1] "The movant prevails by showing 'that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"[2]

In a diversity case like this one, when no Texas Supreme Court case "precisely" resolves the legal issue, we "must make an *Erie* guess and determine as best we can what the Supreme Court of Texas would decide."[3] This requires us to use "the sources of law that the state's highest court would look to, including intermediate state appellate court decisions, the general rule on the issue, decisions from other jurisdictions, and general policy concerns."[4] Ultimately, however, "it is not for us to adopt innovative theories of recovery under state law" without strong reason to believe that those theories would be adopted if the Texas Supreme Court had the opportunity.[5]

## III

Texas law instructs that "[a] negligence cause of action has three elements: 1) a legal duty; 2) breach of that duty; and 3) damages proximately resulting from the breach."[6] The district court stopped its analysis at the first step, concluding that Walgreens owed no legal duty to the plaintiffs.

---

[1] *E.g., Wease v. Ocwen Loan Serv., L.L.C.*, 915 F.3d 987, 992 (5th Cir. 2019).

[2] *Id.* (quoting Fed. R. Civ. P. 56(a)).

[3] *Hays v. HCA Holdings, Inc.*, 838 F.3d 605, 611 (5th Cir. 2016) (quoting *Harris Cty. v. MERSCORP Inc.*, 791 F.3d 545, 551 (5th Cir. 2015)).

[4] *Id.* (internal quotation marks and citation omitted).

[5] *Meador v. Apple, Inc.*, 911 F.3d 260, 264 (5th Cir. 2018) (quoting *Mayo v. Hyatt Corp.*, 898 F.2d 47, 49 (5th Cir. 1990)).

[6] *Van Horn v. Chambers*, 970 S.W.2d 542, 544 (Tex. 1998).

No. 18-40636

The Texas Supreme Court has settled that "the existence of duty is a question of law for the court to decide from the facts surrounding the occurrence in question."[7] "When a duty has not been recognized in particular circumstances, the question is whether one should be."[8] We conclude that the district court did not err in declining to recognize a duty between Walgreens and the plaintiffs in this case.

## A

First, we consider whether the Texas Supreme Court has already spoken on the existence—or nonexistence—of a duty between a pharmacy and third parties injured as the result of an allegedly mis-filled prescription. Walgreens urges that this case can straightforwardly be resolved by caselaw holding that a healthcare provider owes no duty to third-party nonpatients for negligent treatment or misdiagnosis of patients. The Texas Supreme Court has repeatedly recognized that "[a]ny duty of reasonable care on [the part of the healthcare provider] to avoid such negligence originates solely through the relationship with, and flows only to, his patient."[9] It has also stated that "there is generally no relationship between [a] doctor and patient that would provide the *type of control* necessary to create a duty to third persons."[10]

---

[7] *Pagayon v. Exxon Mobil Corp.*, 536 S.W.3d 499, 503 (Tex. 2017) (quoting *Greater Hous. Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex. 1990)).

[8] *Id.*

[9] *Van Horn*, 970 S.W.2d at 545 (holding that a treating physician did not owe a duty to hospital employees who were killed or injured when trying to subdue a violent patient); *see also Thapar v. Zezulka*, 994 S.W.2d 635, 636–38 (Tex. 1999) (holding that a psychiatrist owed no duty to a third party for negligent misdiagnosis or treatment even where the patient had previously told the psychiatrist that he "[felt] like killing" the third party); *Krishnan v. Sepulveda*, 916 S.W.2d 478, 482 (Tex. 1995) (holding that a doctor owed no duty to a woman's husband when it allegedly provided her with negligent prenatal care that caused her to miscarry); *Bird v. W.C.W.*, 868 S.W.2d 767 (Tex.. 1994) (holding that a psychologist had no duty to a third party not to negligently misdiagnose a child's condition as stemming from the third party's abuse).

[10] *Tex. Home Mgmt., Inc. v. Peavy*, 89 S.W.3d 30, 35–36 (Tex. 2002) (emphasis added). In *Peavy*, however, the Texas Supreme Court held that a medical provider did potentially

No. 18-40636

Walgreens's argument that this line of cases "definitively" resolves the issue goes a step too far. The Texas Supreme Court has not yet addressed whether a *pharmacy*'s duty of care is limited to that pharmacy's own patients. Its negligent-treatment and negligent-misdiagnosis caselaw disfavors imposing a duty between healthcare providers and third parties due in part to well-founded concerns about interfering with medical professionals' judgment and discretion.[11] Although pharmacists are treated as healthcare providers under Texas law,[12] the filling of an existing prescription arguably does not require the same degree of judgment and discretion as an initial diagnosis or plan for treatment.[13] We therefore are not convinced that the Texas Supreme Court has already squarely decided this issue in favor of Walgreens, and cannot comfortably end our analysis here.

**B**

Acknowledging that the Texas Supreme Court has also not spoken in their favor regarding this issue, the plaintiffs instead ask us to extrapolate a

---

have a duty of care to third parties when it allegedly failed to control a patient who was under an unusually high degree of court-mandated supervision. *See id.*

[11] The seminal case on the duty of a health-care professional to third parties, *W.C.W. v. Bird*, emphasized the need for mental health professionals to be "allowed to exercise their professional judgment in diagnosing sexual abuse of a child without the judicial imposition of a countervailing duty to third parties." 868 S.W.2d at 769.

[12] *See* Tex. Civ. Prac. & Rem. § 74.001(a)(12)(A).

[13] Walgreens cites an unpublished intermediate appellate decision, *Davis v. Eckerd Holdings II, Inc.*, extending the Texas Supreme Court's negligent-treatment and negligent-misdiagnosis caselaw to pharmacists. No. 05-96-01413-CV, 1999 WL 605590 (Tex. App—Dallas, 1999, no pet.). That case addressed whether a pharmacist owed a tort duty to the parents of an infant who suffered a drug overdose after having been given syrup that was one thousand times more powerful than the prescribed medication. *See id.* at *1. The Court of Appeals concluded that because pharmacists qualify as healthcare providers under Texas law, the Texas Supreme Court's negligent-treatment and negligent-misdiagnosis cases were "instructive" in concluding that the pharmacist owed the parents no duty of care separate from a duty to their infant child. *Id.* at *3. Standing alone, *Davis* does not allow us to conclude either that the Texas Supreme Court has definitively established that pharmacies owe no tort duties to third parties or that it would do so if given the opportunity.

duty from other areas of Texas tort law.[14] They rely heavily on *Gooden v. Tips*, an intermediate appellate case holding that where a doctor had prescribed a patient Quaaludes without warning her about the risks of driving under their influence, the doctor owed a duty of care to a third party who was struck by the patient.[15] It is unlikely that *Gooden* reflects the Texas Supreme Court's view on a healthcare provider's duty to third parties to warn patients of the risk of prescribed medication. It was decided before the line of cases addressing healthcare providers' duties to third parties, and the Texas Supreme Court subsequently rejected a duty on the part of a doctor to warn an epileptic patient about the risk of driving.[16] A concurring opinion in that case faulted the majority for failing to make clearer that *Gooden* is not good law in light of the cases limiting health care professionals' duty to their own patients.[17]

Regardless, to the extent that *Gooden* represents how the Texas Supreme Court would resolve the question of whether a health care professional has a duty to third parties to warn a patient of the risks of prescribed medication, *Gooden*'s framework does not apply here. The plaintiffs

---

[14] The plaintiffs also argue that Walgreens has liability under the Texas Wrongful Death Act, Tex. Civ. Prac. & Rem. Code § 71.002 *et seq.*, and that the district court's decision denied them their right to open courts under the Texas Constitution, Tex. Const. Art. I, § 13. These arguments fail because they are predicated on the assumption that Walgreens owed the plaintiffs—in the case of the Wrongful Death Act, only Martinez—a duty of care. They cannot support liability absent an accompanying duty. *See* Tex. Civ. Prac. & Rem. Code § 71.003(a) (providing a cause of action under the Wrongful Death Act "only if the individual injured would have been entitled to bring an action for the injury if the individual had lived"); *Burlington N. & Santa Fe Ry. Co. v. Poole Chem. Co.*, 419 F.3d 355, 360 (5th Cir. 2005) (explaining that the "open courts" provision does not create new rights, but rather protects the ability to pursue remedies "for such wrongs as are recognized by the law of the land" (citation omitted)).

[15] 651 S.W.2d 364, 365–72 (Tex. App.—Tyler, 1983, no writ); *see also Flynn v. Hous. Emergicare, Inc.*, 869 S.W.2d 403, 405–06 (Tex. App.—Houston [1st Dist.] 1993, writ denied) (distinguishing *Gooden* as a case where a doctor had a duty to third parties because the doctor gave the patient the medication that caused her impairment).

[16] *See Praesel v. Johnson*, 967 S.W.2d 391, 398 (Tex. 1998).

[17] *See id.* at 399 (Enoch, J., concurring).

do not contend that the medication given to Gamboa was unaccompanied by proper warnings and directions for its use. Nor do we think that the theory underlying *Gooden* maps neatly onto the facts of this case. As we will explain, foreseeability is paramount to the duty analysis, and there are relevant differences between failing to warn a patient of the risks of medication that the healthcare professional knows the patient will take, on the one hand, and giving a patient a bottle of prescription medication intended for someone else, on the other.

Taking a different tack, the plaintiffs also argue that tort liability here is simply an analogue of "dram shop" liability under Texas law. *El Chico Corp. v. Poole* held that an alcoholic beverage licensee had a duty of care to third parties not to serve alcohol to a customer the licensee knew or should have known was intoxicated and who later injured others by driving under the influence.[18] The Texas Supreme Court reasoned that because "[t]he risk and likelihood of injury from serving alcohol to an intoxicated person whom the licensee knows will probably drive a car is . . . readily foreseen," a duty of care owed by licensees to third parties is "merely the application of the general duty to exercise reasonable care to avoid foreseeable injury to others."[19] The plaintiffs argue that where a pharmacy gives a customer a medication with the potential to cause side effects similar to intoxication, it should bear a similar duty to injured third parties.

The analogy to dram-shop liability fails for two reasons. First, one week after *El Chico* was decided, the Texas legislature enacted the Dram Shop Act to supplant judicially created liability with a statutory remedy, limiting

---

[18] 732 S.W.2d 306 (Tex. 1987).
[19] *Id.* at 311.

liability for alcoholic beverage providers in the process.[20] The legislature's response strongly suggests that creating liability between providers of potentially dangerous substances and injured third parties involves delicate policy determinations. Unsurprisingly, "Texas courts have not expanded the duty in *El Chico* to cover the sale of other potentially harmful products."[21] Second, and relatedly, this case presents different public policy considerations from where a licensee provides alcohol to an already intoxicated person: the social value of pharmacy work is higher than the social value of dram shops, and the foreseeability of the harm that occurred in this case pales in comparison to the foreseeable harm caused by serving alcohol to intoxicated bar patrons who will then drive. It does not follow that because the Texas Supreme Court recognized a duty of care between a licensee and third parties foreseeably injured by drunk driving—in a move promptly superseded by statute—it would recognize a duty between pharmacies and third parties injured as the result of mis-filled prescriptions.

## C

This brings us to the core of the duty analysis under Texas law. When the Texas Supreme Court has neither established nor foreclosed the possibility of a tort duty in "particular circumstances," Texas courts ask whether such a duty "should be" recognized.[22] This involves "social, economic, and political questions and their application to the facts at hand," and involves weighing "the risk, foreseeability, and likelihood of injury against the social utility of the

---

[20] *See* Tex. Alco. Bev. Code §§ 2.02–03 (granting a statutory cause of action against alcoholic beverage providers and making it the exclusive remedy); *Graff v. Beard*, 858 S.W.2d 918, 919–20 (Tex. 1993) (explaining that "[t]he statutory duty established by the legislature also placed a less onerous burden on commercial providers and a correspondingly higher burden of proof on injured parties than the common-law duty created by the court").

[21] *Allen v. Walmart Stores, L.L.C.*, 907 F.3d 170, 179–80 (5th Cir. 2018).

[22] *Pagayon*, 536 S.W.3d at 503.

actor's conduct, the magnitude of the burden of guarding against the injury, and the consequences of placing the burden on the defendant," along with considering "whether one party would generally have superior knowledge of the risk or a right to control the actor who caused the harm."[23]

We have little difficulty concluding that the Texas Supreme Court would not impose a tort duty between pharmacies and third parties of the type the plaintiffs here advocate. The Texas Supreme Court has "described foreseeability as the 'foremost and dominant consideration' in the duty analysis,"[24] and we agree with Walgreens that the harm caused to Martinez and the Longorias was not a foreseeable consequence of Walgreens's alleged conduct. Most importantly, it was not sufficiently foreseeable that a pharmacy customer would take the medication in a bottle intended for someone else, notwithstanding that the label listed someone else's name and a different medication.[25] To be sure, the foreseeability inquiry does not require Walgreens to have foreseen the precise harm to third parties that in fact resulted from giving Gamboa someone else's prescription.[26]   But where Texas courts have

---

[23] *Id.* (quoting *Humble Sand & Gravel, Inc. v. Gomez*, 146 S.W.3d 170, 182 (Tex. 2004)).

[24] *E.g.*, *Peavy*, 89 S.W.3d at 36.

[25] It is also unclear that it was foreseeable that a customer who took someone else's prescription drug would experience the type of reaction that would impair his cognitive and motor skills while driving. The plaintiffs' own summary judgment evidence indicates that glyburide metformin does not *necessarily* cause hypoglycemia in non-diabetics, and that Gamboa's age and impaired kidney function made him more susceptible to the condition as a result of taking the medication. This distinguishes this case from, for example, *Gooden*, where the drug was likely to impair the ability to safely drive in anyone who took it. *See Gooden*, 651 S.W.2d at 369–70.

[26] *See Austin v. Kroger*, 864 F.3d 326, 333 (5th Cir. 2017) (per curiam) ("Texas courts have consistently held that foreseeability turns on the existence of general danger, not awareness of the exact sequence of events that produced the harm." (internal quotation marks omitted)).

found the risk of harm to a third party to have been foreseeable, the possibility of harm was significantly less attenuated.[27]

Foreseeability aside, the Texas legislature has shown itself to be both willing and able to undertake the public policy balancing inherent in extensive regulation of pharmacies' treatment of prescription drugs. For example, Texas law allows pharmacies to dispense dangerous drugs—including any drug that requires a prescription, such as glyburide metformin—only to those with valid prescriptions.[28] It sets forth extensive labeling requirements, including that the label be easily readable and include the name of the patient and the drug's brand name or generic name.[29] Further, it imposes criminal liability on pharmacists who dispense dangerous drugs without prescriptions or fail to comply with labeling requirements,[30] and imposes civil penalties on those who unlawfully engage in the practice of pharmacy.[31] That is, the legislature has detailed other protections against the risk, and a tort duty to third parties would be in tension with this extensive regulatory scheme.[32] This bolsters our

---

[27] *See Peavy*, 89 S.W.3d at 36–39 (rejecting summary judgment due to genuine issues of material fact over whether it was foreseeable to a care facility for the mentally disabled that a resident with an extensive history of violence would pose a threat to strangers when allowed outside the facility); *Bird*, 868 S.W.2d at 769 (recognizing the foreseeable harm to a parent who was accused of sexual abuse due to allegedly negligent mental health treatment provided to the child, though ultimately concluding that the mental health professional still did not owe a duty of care to the parent); *El Chico*, 732 S.W.2d at 313–14 (emphasizing the foreseeability of harm specifically where an alcoholic beverage purveyor sold alcohol to a customer who was *already intoxicated* and who the purveyor knew or should have known was *likely to drive* after leaving the establishment); *Gooden*, 651 S.W.2d at 368 (recognizing a foreseeable risk of harm where a doctor prescribed a patient Quaaludes and could have expected that she would take those drugs before driving without a warning to the contrary).

[28] *See* Tex. Health & Safety Code § 483.021(a); Tex. Occ. Code §§ 562.056, 562.112.

[29] *See* Tex. Occ. Code § 562.006.

[30] *See* Tex. Health & Safety Code § 483.042.

[31] *See* Tex. Occ. Code § 566.101.

[32] *See Ritchie v. Rupe*, 443 S.W.3d 856, 891 (Tex. 2014) (declining to create a new cause of action, in part because the legislature had already created a "detailed and extensive" statutory scheme, "reflecting legislative policy judgments about when the government should step in to impose rights and obligations on the parties and when the parties should be free to dictate their own rights and obligations vis-à-vis each other").

conclusion that the Texas Supreme Court would not recognize a duty of care owed by Walgreens to the plaintiffs in this case.

The plaintiffs suggest that this degree of legislative involvement actually cuts in their favor, in particular the statutory prohibitions on distributing prescription drugs to someone without a prescription. They disclaim reliance on statute to create tort liability where none would otherwise exist, arguing solely that statutory prohibitions help to more clearly define the standard of care Walgreens owed. But their reliance on statute begs the question of whether Walgreens owed a preexisting duty of care to the plaintiffs as non-patient third parties.

To the extent that Texas courts are willing to infer a new tort duty from legislation—a rare, but not unheard-of, phenomenon[33]—we disagree that the statutory prohibitions the plaintiffs cite point to a duty here. The Texas Supreme Court has settled that "[t]he threshold questions in every negligence per se case are whether the plaintiff belongs to the class that the statute was intended to protect and whether the plaintiff's injury is of a type that the statute was designed to prevent."[34] We do not doubt that legislative regulation of pharmacies was intended to protect "the public health, safety, and welfare."[35] The plaintiffs argue that as members of the public, they are therefore within the class of persons that the legislature aimed to protect by prohibiting the distribution of a prescription drug to someone without a prescription for that drug. Nothing suggests, however, that this statutory

---

[33] *See Perry v. S.N.*, 973 S.W.2d 301, 305–08 (Tex. 1998) (observing that the Texas Supreme Court has "created a new duty by applying negligence per se on only one occasion"); *see also Allen*, 907 F.3d at 180 (after declining to recognize a common-law duty under Texas law, observing that "[t]ellingly, Texas courts rarely imply a civil tort duty from a criminal statute").

[34] *Perry*, 973 S.W.2d at 305.

[35] *See* Tex. Occ. Code § 551.002.

prohibition intended to prevent the *type of harm* that the plaintiffs experienced—rather than preventing harm to the members of the public who ingest potentially dangerous prescription drugs and suffer harm as a result.[36] We therefore cannot infer from Walgreens's alleged violation of its statutory obligations that its tort duty of care extends to the third-party plaintiffs in this case.

**\* \* \***

In sum, looking to the factors the Texas Supreme Court would consider—in particular, the foreseeability of the harm, the presence of other protections, and the danger of interference with the legislature's balancing of public policies—we conclude that the Texas Supreme Court would not recognize a duty between a pharmacy and third parties injured as a result of a customer taking the incorrect prescription. Mindful that we should not "lightly abdicate our mandate to decide issues of state law when sitting in diversity," we decline to exercise our discretion to certify this issue to the Texas Supreme Court.[37]

**IV**

We affirm the district court's grant of summary judgment to Walgreens.

---

[36] For example, this case is unlike *Praesel v. Johnson*, which considered whether a doctor's violation of reporting requirements to the Texas Department of Public Safety generated a duty of care between the doctor and a third party who was injured when the patient had a seizure while driving. *Praesel*, 967 S.W.2d at 394–96. There, although the Texas Supreme Court ultimately did not recognize a duty based on this statutory requirement, it observed that the "general public" was plainly within the class of persons protected by such a requirement. *See id.* at 395.

[37] *In re Deepwater Horizon*, 807 F.3d 689, 698 (5th Cir. 2015) (quoting *Jefferson v. Lead Indus. Ass'n, Inc.*, 106 F.3d 1245, 1248 (5th Cir. 1997)); *see also Patterson v. Mobile Oil Corp.*, 335 F.3d 476, 487 (5th Cir. 2003) ("As a general rule, we do not use certification as a panacea for resolution of those complex or difficult state law questions which have not been answered by the highest court of the state." (internal quotation marks omitted)).