## LEVI JONES v. ROYAL A. PORTER.

Where a party claiming to be a mortagee filed his bill praying to be allowed to redeem an estate by paying the money which he had agreed to pay for it, and the court decreed that upon payment of the balance of principal and interest due, during that term of the court, the title to the land should pass to him free from all incumbrance, such plaintiff has no right to complain of the decree.

A mortgagor, bringing a bill to redeem, must allege and prove payment, or tender the amount due.

On a bill to redeem, a decree for the plaintiff ought not, in general terms, to say that on paying the purchase-money, with interest, the mortgagee shall convey the premises to the mortgagor; but that such conveyance shall be made upon payment within a time stated, and, if not so made, the mortgagor shall be forever foreclosed of his equity of redemption, and the mortgaged premises sold.

The only relief which the chancellor can grant, is the right to redeem upon a tender of the consideration money, with costs, and no suggestion of poverty will avail the mortgagor. (Paschal's Dig., Arts. 4674, 4675, Notes 1060, 1061.)

Where the plaintiff gave his notes and a mortgage for $12,860, and three years and a half afterwards there was a decree of foreclosure and sale, under which the mortgagee purchased the mortgaged property, and afterwards agreed to sell the property to the mortgagor upon his paying $20,000, which agreement was afterwards modified by an extension of time upon the payment of ten per cent. per annum interest upon the $20,000, such a transaction was not usurious upon its face. It shows an agreement to sell, and if it be alleged that it was a usurious contract, it must be proved. (Paschal's Dig., Art. 3942, Note 934.)

ERROR from Galveston. The case was tried before Hon. PETER W. GRAY, one of the district judges.

The record is frightfully voluminous, and it contains a full history of the hopes and prospects of building a great city at La Salle, with not a little which in the past, and prospectively, affects the growth of Galveston and Bolivar. The most to be deduced from the whole record is, that interest can destroy the most sanguine expectations of castle builders and city builders.

The facts which controlled this case were about as follows:

The plaintiff in error, Jones, brought two suits against the defendant in error, one in the district court of Galveston county, the other in the district court of Calhoun county, with the object of determining his right to redeem certain lands situated in those counties, and which were subject to a mortgage given to the defendant in error. The suit in Calhoun county was transferred, by consent, to Galveston, and consolidated with the other. On the trial of the consolidated cause, at the fall term, 1859, the following facts were proved, without much controversy or conflict of testimony:

Porter had, previously to January 4, 1847, bought an interest in certain lands in Texas from A. T. Burnley and William M. Lambeth, and paid on the purchase $5,000, and agreed to pay Lambeth $2,000 more, with interest, making in all a little over $7,000. On the day above mentioned he contracted with Jones to sell to him the interest thus acquired, upon the payment by the latter of $12,868, to be secured by his two notes and a mortgage upon the land so sold, and also upon twenty-five hundred and sixty acres of land on Galveston island. By this bargain Porter made $5,000, and Jones took his place in the agreement with Burnley and Lambeth. The notes and mortgage were accordingly executed on the 27th of March, 1848; and, as Porter became dissatisfied by the delay in meeting the notes, Jones agreed to a decree of foreclosure of the mortgage in the district court of the United States at Galveston, which was rendered June 4, 1849, and the day of sale adjourned from time to time until November, 1850, when, during the absence of Jones for several months from the State, the sale was directed by Porter to take place, and he became the purchaser, without opposition, for about $1,400, having, at and before the sale, stated to the attorneys of Jones, and as a reason to induce them to abandon opposition, that all he wanted was his money, and that

Jones could have the land if he came to him with the money, notwithstanding the sale. It would seem, therefore, clearly apparent, that the object of both parties in entering into the mortgage, and in consenting to the decree, was to give a greater or additional security for the payment of the money, and that Porter did not then wish or intend to take the lands in payment. Accordingly, in the same month, November 29, 1850, an agreement was made between Porter and Jones, in which it was recited that "said Porter is not disposed unnecessarily to sacrifice the interest or property of said Jones," and therefore agrees to reconvey to him the property purchased at the sale for the sum of $20,000, payable in two instalments, on the 1st July, 1851, and 1st January, 1852; but, if not then paid, the agreement to be void. On June 14, 1851, a further agreement was made, extending the time for the entire payment to July, 1852, on condition that Jones should pay the interest in advance, viz, $1,500. By similar subsequent agreements, made April 7, 1852, May 11, 1853, June 8, 1854, December 30, 1854, April 30, 1855, January 1, 1856, April 16, 1856, the time for the final payment was extended, upon the payment of the semi-annual interest on the $20,000. In the agreement of April 30, 1855, it is recited, that Jones has paid semi-annually the interest accruing, at the rate of ten per cent. per annum, up to the first day of July next; yet, wanting further time to pay the principal debt, agrees to pay $2,000 on the 1st of January, 1856; $1,000 on the 1st day of July, 1856, $1,000 on the 1st day of January, 1857, and the $20,000 on the 1st day of July, 1857. The first of these payments was made, but, the other preliminary payments of interest not having been met, Porter declined to make further extensions, and required payment in thirty days after December 13, 1857; and plaintiff was compelled to apply to the courts for relief.

It was proved that the lands mortgaged were worth much more than the indebtedness, and that Jones was a

man of sanguine and enthusiastic temperament, who would be likely to make sacrifices of his property, or incur indebtedness inconsiderately, on account of expectations of future profit.

The district court instructed the jury correctly as to the circumstances and principles of law tending to make the contract of November, 1850, and the subsequent agreements, in effect, a mortgage, and subject to the right of redemption; but also charged that, "although the original judgment was for the sum of $15,000 only, yet the agreement of November, 1850, acknowledges or specifies the amount to be paid to defendant as $20,000; and, in the absence of allegation or proof that the increased amount was illegal or usurious, the amount agreed on is to be assumed as the true amount at that date. You will, therefore, allow the plaintiff the payments of interest made on that amount, and charge him with interest on that sum from the time of the last payment of interest to this date."

The plaintiff excepted specially to the refusal of the court to allow a short time for payment of the redemption money after the term of the court had expired, and assigned for error that refusal, and also the instruction of the court denying to the jury the right to examine the evidence as to the usurious character of the contracts of the parties, and assuming that these transactions were not usurious. The jury returned a verdict that the plaintiff had the right to redeem by paying the defendant $26,038 85, the principal and interest due 7th January, 1860. The court decreed accordingly, and that, upon payment of that sum, the title of Porter to the land be divested; and that, if the payment be not made, the land be sold to pay the debt, interest, and costs. The plaintiff prosecuted error, and assigned for error that the amount of the judgment was too large; that longer time should have been given for the payment; and the want of special direction about the order of sale.

*Wm. G. Hale,* for plaintiff in error.—1. The defendant in error having assented to the judgment by taking out the order 'of sale on it, and proceeding thereon until stayed by the *supersedeas,* cannot now allege error, and this court will confine its examination of the case to the particular errors designated by the plaintiff.

2. As to the exception to the refusal of the court to allow a short time for payment, it is unnecessary to urge that, except in the question of costs, as the time thus desired has been practically obtained by the writ of error.

3. But the district judge clearly erred in deciding that the transactions between Jones and Porter were not usurious. The mortgage debt, according to the consent decree, was, in January 1, 1849, only $15,063, and in all the subsequent agreements, and by the verbal and written understanding of the parties, the original debt still remained as the basis of the new arrangement. That debt is treated as still due, and only postponed from time to time by the payment of interest, not on the original sum, but on $20,000. · The fact that the succeeding payments by Jones are described as interest shows that the parties understood that there was no existing debt—not a mere opportunity of a future purchase—and this debt can be only the original one. It is clear that, in order to obtain time, Jones added to the principal nearly $5,000, thus raising it to $20,000, and then paid interest on this excess. It was a mere device to cover usury, and this court has repeatedly said that it would carry out the policy of the usury laws, and apply them to every case, notwithstanding the form of the contract intended to evade them. (Spann v. Sterns, 18 Tex., 570; Mosely v. Smith, 21 Tex., 442.) And where a contract to purchase or re-purchase is only a means of covering up usury, the courts will interfere. (Lloyd v. Scott, 4 Tex., 205; 2 Pars. on Bills, 413, 414.) And when it appears that, at the close of all the payments, more than the sum advanced, with legal interest thereon, will have been returned,

the contract is usurious. (Doe v. Gooch, 3 Barn., 664; Tereday v. Wightwick, 1 Russ. & Mylne, 45.) Under the particular circumstances of this case, we may fairly use the language of Lord Mansfield: "It is impossible to wink so hard as not to see that there was no idea between the parties of anything but a loan of money." (Lowe v. Waller, 2 Doug., 736.)

4. It appears from the various receipts and agreements, that Jones paid in all $8,705, viz: August, 1851, $500; December, 1851, $1,000; August, 1852, $1,000; January, 1853, $1,000; June, 1853, $1,000; December, 1853, $1,000; April, 1854, $105 and $2,100; and subsequently, $1,000. These payments should be imputed, not to cover the usurious interest, but to the legal principal, and, by applying them to the old judgment debt of $15,063, that debt will be reduced more than one-half, so that the present judgment in the court below is in excess nearly $20,000. (Ware v. Bennett, 18 Tex., 606; Stanley v. Westrop, 16 Tex., 205.)

*George Mason & Philip C. Tucker*, for the defendant in error.

DONLEY, J.—This was a suit by the plaintiff in error, who was plaintiff below, alleging that the various agreements made between himself and defendant were in effect a mortgage of the lands, for the purpose of securing the debt owing to defendant, and a prayer that he might redeem, &c.

A decree was made, that the appellant redeem on paying to appellee the debt ascertained to be due during the term of the court at which the same was rendered; and that, upon the payment of the money ascertained by the decree to be due the defendant, the lands be discharged from the incumbrance held by defendant on same, and from any claim or incumbrance by appellee, and the title to the same be vested in the plaintiff. And it was further provided, that if pay-

ment be not made of the sum found to be due, during the term at which the decree was rendered, an order of sale issue, as in ordinary cases.

It is not believed that the plaintiff has been deprived of any legal right by this decree, or that he has just cause of complaint. His application to redeem should have been accompanied with a tender of what was due from him on the mortgage, (if the writings for his benefit may be so construed.)

A mortgagor, bringing a bill to redeem, must allege and prove payment, or tender the amount due. (Terrell v. Merrell, 17 Mass., 117.)

On a bill to redeem, a decree for the plaintiff ought not, in general terms, to say that on paying the money, with interest, the mortgagee shall convey to the mortgagor the premises, but that such conveyance shall be made upon payment within a time stated, and, if not then made, the mortgagor shall be forever foreclosed of all equity of redemption, and the mortgaged premises be sold. (Turner v. Turner, 3 Mumf., 66.)

The only relief a court of equity can grant a mortgagor is, to allow him to redeem on a bill for that purpose. (Croft v. Ballard, 1 Smedes & Marsh. Ch., 366.)

When a mortgagor offers to redeem, he must tender the consideration money. (Ogle v. Ship, 1 A. K. Marsh., 287.)

Upon a bill to redeem or set aside a mortgage, a redemption cannot be decreed unless the bill contains an offer to pay the amount found due on the mortgage for principal and interest. (Beekman v. Frost, 18 Johns., 544.) It certainly is an essential part of a bill to redeem a mortgage that it offer in express terms to pay the amount with costs. The bill usually states a prior tender of the money, and a refusal to accept it. (Beekman v. Frost, 18 Johns., 544.)

When a mortgagor comes into a court to obtain a sale

of the mortgaged premises he must offer to redeem, and a suggestion of his poverty will not help him. (Goldsmith v. Osborn, 1 Edw. Ch., 560, 563.)

The defendant in error does not ask that the judgment be reversed, but submits that it may be affirmed. The objection urged by the plaintiff, that sufficient time was not given in which to redeem, it is believed was not well taken. In fact, it was upon his petition that the matter was brought before the courts and we have cited authorities that an application to redeem must be accompanied by an offer to pay the money due. The decree of the court required that the money should be paid during the term at which the decree was rendered. The court was not compelled on the petition to give time to redeem, and the refusal of time is not an error for which the appellant is authorized to reverse the judgment. There certainly is no ground of complaint now of the want of time in which to redeem; the defendant has been delayed since judgment more than seven years.

In an additional argument by plaintiff, at the present term of the court, it is insisted that the two notes of $10,000 each, due July, 1861, and January, 1862, are founded on an illegal agreement to pay usurious interest. This objection is not well founded in fact. If the decree of the United States district court is to be taken as the consideration of the notes, the notes must be sustained, allowing that the decree, bearing the highest rate of interest legal to be contracted for and received, will exceed the amount of the notes.

It is further clearly shown, that the appellee purchased the lands at a sale made in pursuance of and under a decree of the United States district court. The court having jurisdiction to render the decree and order of sale under which the lands were sold, it cannot be held void or as an insufficient foundation for a decree.

If the sale to the appellee was legal, and vested the title

to the lands in him, he might have sold to the appellant at a price greatly exceeding what the debt at the highest rate of legal interest would have amounted to. If the purchase at the marshal's sale by the appellee, and his subsequent sale to the appellant, were made in the usual course of trade, and not for the purpose of covering a usurious transaction, the sale must be sustained. The evidence does not tend to show that the transaction was for any illegal purpose.

There is no error in the judgment of which the plaintiff can complain, and the defendant asks that it be affirmed, which is done.

Judgment affirmed.