# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

March 10, 2025

Lyle W. Cayce
Clerk

No. 24-40167

Kafi, Incorporated,

*Plaintiff—Appellant*,

*versus*

Wells Fargo Bank, N.A., *as Trustee for* ABFC 2006-OPT3 Trust, Asset Backed Funding Corporation Asset-Backed Certificates, Series 2006-OPT3; PHH Mortgage Corporation,

*Defendants—Appellees*.

_____

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 3:20-CV-354

_____

Before Ho, Engelhardt, and Douglas, *Circuit Judges*.
Kurt D. Engelhardt, *Circuit Judge*:

Plaintiff-Appellant Kafi, Inc. ("Kafi"), appeals the district court's adverse summary judgment rulings regarding (1) Defendant-Appellee Wells Fargo Bank, N.A.'s standing to foreclose on residential real property that Kafi currently owns in League City, Texas; and (2) Kafi's ability to prevail on its alternative claim for equitable redemption. We AFFIRM.

No. 24-40167

## I.

Kafi owns a residential property located at 810 Almond Pointe in League City, Texas ("the Property"). In this lawsuit, Kafi challenges the right of Wells Fargo Bank, N.A., as Trustee for ABFC 2006-OPT3 Trust, Asset Backed Funding Corporation Asset-Backed Certificates, Series 2006-OPT3 ("Wells Fargo") to foreclose on the Property.

Kafi purchased the Property from non-parties Joe and Kelly Richardson (the "Richardsons") on September 25, 2020. The Richardsons had purchased the Property on June 28, 2006, with financing provided by a loan from Sand Canyon Corporation ("Sand Canyon"). As security for the Loan, the Richardsons executed an Adjustable Rate Note ("the Note") and a Deed of Trust (collectively, "the Loan") in favor of Sand Canyon. In October 2006, pursuant to a Pooling and Servicing Agreement ("PSA"), Sand Canyon "transferred, assigned, sent over, and otherwise conveyed" its interest in the Loan to Wells Fargo. As part of the transfer and assignment, Sand Canyon also delivered to Wells Fargo the original Note endorsed in blank and the original Deed of Trust.

On January 5, 2012, Sand Canyon executed a Corporate Assignment of the Deed of Trust from Sand Canyon to Wells Fargo (the "Assignment"), which purported to assign the Deed of Trust, along with "all interests secured thereby, all liens, and any rights due or to become due thereon" to Wells Fargo. The Assignment was recorded in the real property records of Galveston County, Texas, and reflects that it was executed on behalf of Sand Canyon by Derrick White, as a Vice President of Sand Canyon, and notarized by Miranda Avila, employees of former defendant Nationwide Title Clearing, Inc. ("NTC"). Kafi contends that White's and Avila's signatures were forged.

2

No. 24-40167

The Property has been noticed for sale on five separate occasions since 2008 (September 2, 2008; October 2, 2012; December 4, 2012; August 1, 2017; and May 5, 2020). For unknown reasons, none of those foreclosure sales occurred. In January 2013, the Richardsons executed a loan modification agreement, effective February 1, 2013. Thereafter, the Richardsons entered into additional loan modification agreements in March 2014, April 2015, September 2016, and June 2018. Beginning with the 2013 loan modification agreement and continuing until early 2019, PHH Mortgage Corporation ("PHH"), the loan servicer, accepted payments from the Richardsons in amounts less than the full amount due under the Note. Ultimately, however, the Richardsons became delinquent in the payment of the Note, failing to pay the amount due on April 1, 2019, and each monthly payment due thereafter.

On September 25, 2020, with the Loan still in default, Kafi purchased the Property "as-is" from the Richardsons by a general warranty deed, which provides, in relevant part:

> This conveyance is made subject-to any outstanding liens of record. Grantors understand that Grantee is in no way assuming or promising to pay any outstanding liens of record.

Shortly thereafter, Kafi sued Wells Fargo, PHH, Sand Canyon, and NTC in Texas state court, challenging their rights to foreclose on the Property. The defendants removed the action to the United States District Court for the Southern District of Texas, Galveston Division, on November 13, 2020.

As set forth in Kafi's Fourth Amended Complaint, filed on February 25, 2022, Kafi seeks declaratory judgment in its favor, asserting that Wells Fargo lacks standing to foreclose on the Property because, it contends, the assignment of the Deed of Trust from Sand Canyon to Wells Fargo was forged and thus void *ab initio*. Kafi also seeks to "quiet title" against Wells

Fargo, again claiming that the assignment of the Deed of Trust was forged such that Wells Fargo lacks a valid interest in the Property. Kafi maintains that Wells Fargo's claim of a right to foreclose on the Property creates a cloud on the title that must be removed in order to confirm Kafi's ownership free and clear of any claims by it. Finally, Kafi additionally asserts, in the alternative, a claim for equitable redemption, contending that if Wells Fargo is found to have standing to foreclose, Kafi must then be allowed an opportunity to redeem the Property, prior to foreclosure, by paying the amount of any valid liens.

Considering the defendants' motion to dismiss, which sought dismissal of all claims, the magistrate judge recommended that the motion be granted in part and denied in part. The district judge adopted the magistrate judge's Memorandum and Recommendation in its entirety, thus dismissing Kafi's claims against Sand Canyon and NTC, and dismissing Kafi's stand-alone forgery claim and claim for exemplary damages. Dismissal was denied, without prejudice to being re-urged by motion for summary judgment, relative to Kafi's claims for declaratory relief, its claim to quiet title, and its claim, asserted in the alternative, for the equitable right of redemption.

Following that ruling, the remaining defendants, Wells Fargo and PHH, filed a motion for summary judgment. Considering the motion, the magistrate judge issued a Memorandum and Recommendation that the motion for summary judgment be granted in its entirety, which the district judge adopted in full, on February 13, 2024. Final judgment was entered in favor of the defendants, terminating the case, on the same day. This appeal followed.

## II.

We review the grant of a motion for summary judgment de novo. *Xtreme Lashes, LLC v. Xtended Beauty, Inc.*, 576 F.3d 221, 226 (5th Cir. 2009). Summary judgment "shall" be entered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When reviewing a ruling on a motion for summary judgment, we view all facts and evidence in the light most favorable to the nonmoving party. *Xtreme Lashes, LLC*, 576 F.3d at 226. However, "a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or 'only a scintilla of evidence.'" *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 399 (5th Cir. 2008) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)). Instead, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Little*, 37 F.3d at 1075. Finally, "we may affirm a summary judgment on any ground supported by the record." *Yates v. Spring Indep. Sch. Dist.*, 115 F.4th 414, 419 (5th Cir. 2024) (cleaned up).

## III.

Kafi appeals the district court's grant of summary judgment in favor of Wells Fargo. Regarding its request for declaratory judgment and to "quiet title" to the Property, Kafi argues that the district court erroneously concluded that Wells Fargo, as holder of the Note since 2006, has standing to foreclose upon the Property notwithstanding alleged deficiencies and/or forgeries in the subsequent assignment of the Deed of Trust to Wells Fargo in 2012. Kafi also asserts that the district court erred insofar as it decided that Kafi's failure to have already actually tendered—paid or attempted to pay—the amount due on the Loan prevented it from prevailing on its claim for equitable redemption such that immediate summary dismissal of the claim was warranted.

No. 24-40167

## A. Standing to Foreclose

In concluding that Wells Fargo has standing to foreclose on the Property because it is the holder of the Note, the district court began with the premise that, under Texas law, parties with standing to initiate a nonjudicial foreclosure sale include (1) the mortgagee; and (2) the holder of the note. *See EverBank, N.A. v. Seedergy Ventures, Inc.*, 499 S.W.3d 534, 538 (Tex. App.—Houston [14th Dist.] 2016, no pet.).[1]  The district court then considered the same argument that Kafi urges now, i.e., Wells Fargo's entitlement to foreclose is contingent upon its demonstrating ownership, by means of a valid assignment, of the applicable security instrument, i.e., the Deed of Trust.

Citing *SGK Properties, L.L.C. v. U.S. Bank National Ass'n*, 881 F.3d 933 (5th Cir. 2018), the district court rejected Kafi's argument, reasoning, as we did in *SGK Properties*, that "'[e]ven if a party does not have a recorded interest in a security instrument, the party may still have standing to foreclose if the party is the holder or owner of a note secured by the instrument.'" As holder of the Note, the district court concluded, Wells Fargo has standing to foreclose on the Property.

———————————————

[1] Other federal courts, applying Texas law, have reached the same conclusion. *See Martins v. BAC Home Loans, Serv., L.P.*, 722 F.3d 249, 255 (5th Cir. 2013) (quoting *Robeson v. Mortg. Elec. Registration Sys. Inc.*, No. 02-10-00227-CV, 2012 WL 42965 at *6 (Tex. App.—Fort Worth Jan. 5, 2012, pet. denied) ("A deed of trust 'gives the lender as well as the beneficiary the right to invoke the power of sale,' even though it would not be possible for both to hold the note.")); *see also SGK Props., L.L.C. v. U.S. Bank Nat'l Ass'n*, 881 F.3d 933, 941 (5th Cir. 2018); *Harris Cnty., Tex. v. MERSCORP, Inc.*, 791 F.3d 545, 556 (5th Cir. 2015); *Kiggundu v. Mortg. Elec. Registration Sys. Inc.*, 469 Fed. App'x 330, 331–32 (5th Cir. 2012) (summary calendar); *Antony v. United Midwest Sav. Bank*, No. 15-CV-1062, 2016 WL 913975, at *3 (S.D. Tex. Mar. 10, 2016); *In re Wenstrom*, 649 B.R. 492, 501–02 (N. D. Tex. 2023).

No. 24-40167

In reaching its decision, the district court considered Kafi's assertion that *SGK Properties* was incorrectly decided because (according to Kafi) this court, in *Reinagel v. Deutsche Bank National Trust Co.*, 735 F.3d 220, 225–26 (5th Cir. 2013), previously "overturned the old maxim in favor of the new maxim: that the note follows the deed of trust." The district court disagreed with Kafi, reasoning: "*Reinagel* says no such thing and certainly does not stand for such a radical shift in Texas law."

On appeal, Kafi repeats its assertions regarding *Reinagel*. And, as Wells Fargo convincingly explains in its brief, Kafi's arguments still are unavailing. Contrary to Kafi's assertions, *Reinagel*'s "the note follows the mortgage" maxim and *SGK Properties*' "the mortgage follows the note" maxim are not inconsistent.[2] Rather, they merely announce different legal presumptions applicable to different factual scenarios. Specifically, if a note has been transferred with no mention of a mortgage or deed of trust, *SGK Properties*' "the mortgage follows the note" rule applies. Conversely, if a mortgage or deed of trust has been transferred without a note, *Reinagel*'s "the note follows the mortgage" rule presumptively applies. *See Reinagel,* 735 F.3d at 225 ("[U]nder the *Restatement (Third) of Property*: *Mortgages*, the transfer of a mortgage *presumptively* includes the note secured by the mortgage, whether or not the instrument of assignment expressly references the note."); *see also Kramer v. Fed. Nat. Mortg. Ass'n*, No. 12-CV-276, 2012 WL 3027990, at *5 (W.D. Tex. May 15, 2012) ("There is substantial

---

[2] The federal district court decisions cited by Kafi are not to the contrary. They simply recognize, as does *Reinagel*, that a mortgagee is not required to produce the note secured by a mortgage or deed of trust in order to foreclose on the property. *See Guthrie v. Ditech Fin., LLC*, No. 6-16-CV-171, 2017 WL 5653951, at *3 (W.D. Tex. Apr. 20, 2017); *U.S. Bank Nat'l Ass'n v. Johnson*, No. 1:15–CV–788, 2017 WL 598499, at *4 (W.D. Tex. Feb. 14, 2017); *Young v. Bank of Am., N.A.*, No. 4:13–CV–2489, 2014 WL 4202491, at *6 (S.D. Tex. 2014); *Morales v. Wells Fargo Bank, N.A.*, No. SA–13–CV–410, 2013 WL 6057853, at *8 (W.D. Tex. 2013).

authority for the principle that, just as transfer of a promissory note operates to transfer the associated deed of trust, a transfer of the deed of trust likewise transfers the note.").

Indeed, as Wells Fargo emphasizes, the Restatement provision addressed in *Reinagel* expressly acknowledges that the note will follow the security instrument *and* the security instrument will follow the note. That provision states, in pertinent part:

> § 5.4 Transfer of Mortgages and Obligations Secured by Mortgages
>
> (a) A transfer of an obligation secured by a mortgage also transfers the mortgage unless the parties to the transfer agree otherwise.
>
> (b) Except as otherwise required by the Uniform Commercial Code, a transfer of a mortgage also transfers the obligation the mortgage secures unless the parties to the transfer agree otherwise.

*See* RESTATEMENT (THIRD) OF PROPERTY: MORTGAGES, § 5.4 and cmts. (a)–(d).

Accordingly, we affirm this aspect of the district court's summary judgment ruling in favor of Wells Fargo for essentially the same reasons stated by the district court. As recognized in *SGK Properties*, because Wells Fargo is the holder of the Note, it has standing under Texas law to foreclose on the Property. And that standing precludes Kafi's requests for declaratory judgment and to quiet title.[3]

---

[3] A suit to quiet title is an equitable remedy to clarify ownership by removing clouds on a property title. *See, e.g., Ford v. Exxon Mobil Chem. Co.*, 235 S.W.3d 615, 618 (Tex. 2007); *Hahn v. Love*, 321 S.W.3d 517, 531 (Tex. App.—Houston [1st Dist.] 2009). "A trespass to try title action 'is the method *of determining* title to lands.'" *Longoria v. Lasater*, 292 S.W.3d 156, 165 (Tex. App.—San Antonio 2009) (quoting TEX. PROP. CODE. ANN.

No. 24-40167

## B. Equitable Redemption

Kafi also argues that the district court erred in its disposition of Kafi's equitable redemption claim. The equity of redemption doctrine "afford[s] a mortgagor a reasonable time to cure a default and require reconveyance of the mortgaged property." *Scott v. Dorothy B. Schneider Est. Tr.,* 783 S.W.2d 26, 28 (Tex. App.—Austin, 1990, no writ) (citing *Louisville Joint Stockland Bank v. Radford*, 295 U.S. 555, 579 (1935)). "The equity of redemption doctrine has survived and exists in Texas as a common law equitable action." *Id.* One seeking to exercise this right of redemption "must sue for that purpose and plead such equities that would authorize recovery." *Id.* (citing *Parks v. Worthington*, 87 S.W. 720, 721 (Tex. App. 1905, no writ)).

---

22.001(a) (Vernon 2000)) (emphasis added). "In contrast, '[a] suit to quiet title is an equitable action that involves *clearing* a title of an invalid charge against the title.'" *Id.* n.7 (quoting *A.I.C. Mgmt. v. Crews*, No. 01–03–01178–CV, 2005 WL 267667, at *3 n.8 (Tex. App.—Houston [1st Dist.] Feb. 3, 2005), *rev'd on other grounds*, 246 S.W.3d 640 (Tex. 2008)).

"A cloud on title exists when an outstanding claim or encumbrance is shown, which on its face, if valid, would affect or impair the title of the owner of the property." *Vernon v. Perrien*, 390 S.W.3d 47, 61 (Tex. App.— El Paso 2012). If a plaintiff prevails in a suit to quiet title, the court declares invalid or ineffective the defendant's claim to title. *See DTND Sierra Inv., LLC v. Deutsche Bank Nat'l Tr. Co.*, No. 04-12-00817-CV, 2013 WL 4483436, at *2 (Tex. App.—San Antonio Aug. 21, 2013, pet. denied) (mem. op.).

A plaintiff in a suit to quiet title must show that: (1) the plaintiff has an interest in a specific property; (2) title to the property is affected by a claim by the defendant; and (3) the defendant's claim, although facially valid, is invalid or unenforceable. *See Vernon*, 390 S.W.3d at 61; *U.S. Nat'l Bank Ass'n v. Johnson*, No. 01-10-00837-CV, 2011 WL 6938507, at *3 (Tex. App.—Houston [1st Dist.] Dec. 30, 2011). To prevail, the plaintiff bears "the burden of supplying the proof necessary to establish his superior equity and right to relief." *DTND Sierra Invs., L.L.C.,* No. 04-12-00817-CV, 2013 WL 4483436, at *3; *Bell v. Ott*, 606 S.W.2d 942, 952 (Tex. App.—Waco 1980).

Here, Wells Fargo has a valid interest in the Property under settled Texas law because it is the legal holder of the Note. Thus, Kafi cannot establish the existence of genuine dispute of material fact regarding the third element of its quiet title claim.

9

To enforce an equitable right of redemption with respect to a property that is subject to a mortgage, the plaintiff must: (1) prove that the plaintiff has an equitable or legal interest in the property;[4] (2) prove that the plaintiff is ready, willing and able to redeem the property by paying off the amount of valid and subsisting liens to which the property is subject; and (3) assert the claim "before a foreclosure sale occurs because the equity of redemption terminates once a foreclosure sale occurs." *Id.* at 28; *see also Houston v. Shear*, 210 S.W. 976, 981–83 (Tex. Civ. App. 1919), writ granted (Oct. 22, 1919), writ dismissed (Dec. 8, 1920)); *Kingman Holdings, LLC v. Ocwen Loan Serv. LLC*, No. 3:17-CV-41-M, 2018 WL 3448556, at *3 (N.D. Tex. June 28, 2018), *report and recommendation adopted,* No. 3:17-CV-41-M, 2018 WL 3439681 (N.D. Tex. July 17, 2018). The party seeking to exercise the right of redemption must also be willing to pay the expenses that the mortgagee has expended in association with the default. *Scott*, 783 S.W.2d at 28 (citing *Houston*, 210 S.W. at 981).

In deciding that Wells Fargo is entitled to summary judgment on Kafi's claim for equitable redemption, the district court distinguished the pleading requirements that had governed its evaluation and denial of Wells Fargo's motion to dismiss from the evidentiary requirements applicable to a motion for summary judgment. Satisfying those evidentiary requirements, the district court explained, required that Kafi "present evidence sufficient to establish each element of its entitlement to equitable redemption." Specifically, the district court concluded: "In order to prove that a party is ready, willing, and able to redeem a property, the party must show it made a

---

[4] To satisfy this element, the plaintiff must demonstrate that it has an interest in the property and, based on that interest, would suffer a loss from foreclosure. *See, e.g.*, *Scott*, 783 S.W.2d at 28; *Holt v. Deutsche Bank Nat'l Tr. Co.*, 4:15-CV-196-A, 2016 WL 1633254, at *2 (N.D. Tex, Apr. 20, 2016); *Familglia Fatta*, No. 4:18-CV-1147, 2019 WL 3892368, at *4. As current owner of the Property, Kafi undisputedly satisfies this element.

tender of money in the redemption amount[,]" which was $426,472.82 at the time the summary judgment motion was filed.

The district court was not persuaded that Kafi's submission of John Kafi's declaration, in response to Wells Fargo's motion for summary judgment, satisfied that evidentiary requirement. Rather, it concluded: "To avoid summary judgment on an equitable redemption claim, a plaintiff must provide evidence that it has actually tendered the amount owed." In support of this determination, the district court cited *Suri Holdings, LLC v. Argent Mortgage Co.*, No. 4:19-cv-3844, 2021 WL 972888, at *2 (S.D. Tex. Feb. 8, 2021) ("The evidence is undisputed that Suri never tendered the amount owed . . . even though it had sufficient opportunity to do so. Failing to tender the full amount due under the Note precludes any claim in equity.") and *Kingman Holdings, LLC v. Ocwen Loan Serv. LLC*, No. 3:17-CV-41-M, 2018 WL 3448556, at *3 (quotation omitted) ("In the absence of any evidence that Plaintiff tendered the amount due and owing on the Loan [after being provided with a payoff quote], Plaintiff cannot establish that it is entitled to exercise its equitable right of redemption.").

On appeal, Kafi argues the district court erred insofar as it decided that Kafi's failure to have actually tendered (to Wells Fargo) payment of the amount due on the Loan, *prior* to the district court's determination of Wells Fargo's defensive motion for summary judgment, warranted immediate dismissal of its equitable redemption claim.

In support of its position, Kafi stresses, as it did in the district court, that it disputes Wells Fargo's standing to foreclose and, for that reason, its equitable redemption claim was asserted in the alternative. It also reiterates that it offered summary judgment evidence in response to Wells Fargo's motion—the June 9, 2023 declaration of John Kafi, its sole shareholder, President, and CEO, stating that Kafi is "ready, able or willing to redeem the

11

Property in controversy by paying off the full amount of any *valid and subsisting* liens to which the Property is subject" prior to a foreclosure sale. But the district court did not determine Wells Fargo's standing to foreclose on the Property until the same time that it granted Wells Fargo's motion for summary judgment as to Kafi's claim for equitable redemption.[5]

Given these circumstances, Kafi contends, in essence, that the district court should not have dismissed its alternative equitable redemption claim without first having providing it an opportunity, *subsequent* to the court's February 13, 2024 determination of Wells Fargo's standing to foreclose, to pay Wells Fargo the amount due on the Loan. Based on that assertion, Kafi asks that we reverse this aspect of the district court's judgment and remand the case for further proceedings.

Appealing to the principles of fairness underlying the equitable right of redemption, Kafi emphasizes that, in this instance, the district court evaluated its entitlement to equitable redemption *prior* to foreclosure and at the summary judgment stage of a proceeding in which the defendant's standing to foreclose is disputed and the plaintiff submitted other evidence of its readiness and willingness to redeem the property. Pointing to *Fillion v. David Silvers, Co.*, 709 S.W.2d 240, 246 (Tex. App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.), and *Lambert v. First National Bank of Bowie*, 993 S.W.2d 833, 835–36 (Tex. App. 1999), as examples, Kafi argues that requiring prior *actual* tender is generally warranted only in *post*-foreclosure proceedings wherein a plaintiff seeks to recover title to property after it has been sold to the lender or a third-party. Finally, Kafi reiterates that it is a "third-party

---

[5] As previously noted, the district court entered judgment on the same day that it granted summary judgment as to all of Kafi's remaining claims.

titleholder, not the original borrower," and "not in contractual privity with the lender" or "directly responsible for [the Richardsons'] default."

Kafi's appeal of the district court's dismissal of its equitable redemption claim requires us to assess the evidentiary requirements for exercising, or at least preserving, an equitable remedy provided by Texas law. For purposes of this appeal, it is undisputed that the substantive issues are governed by Texas law. When adjudicating claims for which state law provides the rules of decision, we are bound to apply the law as interpreted by the [relevant] state's highest court." *Barfield v. Madison Cnty., Miss.*, 212 F.3d 269, 271–72 (5th Cir. 2000) (citing *Transcontinental Gas Pipe Line Corp. v. Transp. Ins. Co.*, 953 F.2d 985, 988 (5th Cir. 1992)). For this civil matter, that court is the Supreme Court of Texas.

When the Supreme Court of Texas has not addressed the particular substantive law issue presented on appeal, we generally make an *Erie* guess[6] as to what it most likely would decide, "mindful that our task is 'to predict state law, not to create or modify it.'" *McMillan v. Amazon.com, Inc.*, 983 F.3d 194, 199 (5th Cir. 2020) (quoting *Herrmann Holdings Ltd. v. Lucent Techs. Inc.*, 302 F.3d 552, 558 (5th Cir. 2002)). "This requires us to use 'the sources of law that the state's highest court would look to, including intermediate state appellate court decisions, the general rule on the issue, decisions from other jurisdictions, and general policy concerns.'" *Martinez v. Walgreen Co.*, 935 F.3d 396, 398 (5th Cir. 2019) (quoting *Hays v. HCA Holdings, Inc.*, 838 F.3d 605, 611 (5th Cir. 2016)).

For this appeal, the parties have not cited and we are not aware of a controlling decision from the Supreme Court of Texas. We do have the benefit, however, of two Texas state appellate court decisions and one

---

[6] *See Erie R. R. Co. v. Thompkins*, 304 U.S. 64 (1938).

decision by the Supreme Court of Texas that provide some guidance. Two of the three decisions affirm trial court judgments decided adversely to the plaintiffs' redemption claims. In the third, the Texas court of appeals concluded that the district court erred to the extent that it did not exercise its powers of equity to accord the plaintiff a post-trial opportunity to pay the redemption amount.

In *Jones v. Porter*, 29 Tex. 456, 462–63 (Tex. 1867), the plaintiff-appellant challenged a decree of the lower court, rendered after a jury trial, requiring that the redemption amount for a mortgage debt be paid before the expiration of the (fall) term of court during which the court's decree was rendered. The Supreme Court of Texas rejected the appellant's argument that he should have been allowed additional time, post-term, to pay the redemption amount. The appellant's position was rejected. In addressing his argument, the *Jones* court emphasized that the plaintiff's bill (or application) to redeem or set aside a mortgage must offer "in express terms" to pay the amount due with cost; and that "the [district] court was not compelled on the petition to give time to redeem, and the refusal of time is not an error for which the appellant is authorized to reverse the judgment." *Id*. at 462–63.

In *Elbar Investments, Inc. v. Wilkinson*, No. 14–99–00297–CV, 2003 WL 22176624, at *3–4 (Tex. App—Houston [14th Dist.], Sept. 23, 2003, writ denied) (mem. op.), the Texas court of appeals affirmed a directed verdict determining that Elbar, a junior lienholder, who sued seeking to obtain title after belatedly learning of a foreclosure sale, had no equitable right of redemption. Because Elbar had never paid or attempted to pay the amount necessary to satisfy the first lien on the property, which had led to the foreclosure sale, the court concluded it had not shown that it stood ready, willing, and able to redeem the property by satisfying the superior lien. *Id*. at *4.

In *Houston v. Shear*, the Texas court of appeals reversed a judgment denying the right of redemption. 210 S.W. at 981–83. Specifically, the appellate court decided that the district court, having tried and rejected an asserted right of equitable redemption, erred insofar that it, in the exercise of its equity powers, did not accord that party a post-trial opportunity to pay, upon terms and conditions prescribed by the district court, the amount found to be due. *Id.* And if payment were not timely made, the appellate court reasoned, the privilege of redemption would forever be foreclosed. *Id.* at 983.

In support of its determination, the *Houston* court emphasized that the plaintiff had properly alleged that "he is ready, able, and willing, and hereby offers, to pay such [to the defendants] . . . the full amount of money which the court may decree that he should be required to pay in order to redeem all of said property from said liens and to have the title thereto vested in him." *Id.* at 982. Additionally, though there was no tender made by him prior to the filing of the bill to redeem, and "no actual tender at the time of trial," the appellate court reasoned that the plaintiff had testified, at trial and without contradiction, "that he had made arrangements for the procurement of such funds as might be necessary to discharge all liens and charges as were judicially ascertained and established by the court, and that the money would be available for the purpose within a period of 48 hours from the court's announcement of the amount found to be due." *Id.*

These decisions provide some guidance but, notably, none of the three decisions rendered by the Texas state courts reviewed rulings on pretrial motions addressing pre-disposition requirements for the payment of redemption amounts. Rather, in all three cases, the trial court rendered judgment after or during trial.

Several federal district courts, applying Texas law, however, have addressed summary judgment motions directed to equitable reformation claims. The results are mixed. Summary judgment dismissals have been granted in a number of cases wherein an actual tender of the redemption amount owed was not made prior to the court's disposition of the motion. According to these courts, establishing that a party is "ready, willing, and able" to redeem the property in question requires that the party demonstrate that it has actually tendered (or attempted to tender) money in the redemption amount. Otherwise, summary dismissal is warranted. *See Kingman Holdings, LLC v. Ocwen Loan Serv. LLC*, No. 3:17-CV-41-M, 2018 WL 3448556, at *3; *Kingman Holdings, LLC, v. Bank of New York Mellon*, No. 3:17-cv-41, 2022 WL 17660967, at *2 (E.D. Tex. Nov. 9, 2022); *Suri Holdings,* No. 4:19-cv-3844, 2021 WL 972888, at *2; *Familglia Fatta, LLC v. Ocwen Loan Serv., LLC*, No. 4:18-CV-1147, 2019 WL 3892368, at *4–5 (S.D. Tex. Aug. 19, 2019); *Basil Tr. v. Wells Fargo Bank, N.A.*, No. 5:15-CV-328, 2016 WL 11578525, at *3 (W.D. Tex. May 13, 2016); *Post Oak Tr. v. PennyMac Loan Servs., LLC,* 2015 WL 4102163, at *1, 3–4 (E.D. Tex. July 6, 2015).

In contrast, two federal district courts have denied motions for summary judgment sought by defendants, relative to the plaintiffs' equitable redemption claims, despite the absence of a prior tender of the amounts due. These courts reasoned that the plaintiffs there had provided declarations from their respective managers stating that the plaintiff companies were "ready, willing, and able" to pay the requisite sums. *See Ther & Co., LLC v. U.S. Bank, N.A.,* No. CV H-18-2916, 2019 WL 5684226, at *1 (S.D. Tex. Oct. 31, 2019) (pay off lien); *Suniverse LLC v. Encore Credit Corp.,* No. CV 19-2331, 2020 WL 7265403, at *4 (S.D. Tex. Nov. 17, 2020), *report and recommendation adopted*, No. 4:19-CV-2331, 2020 WL 7261054 (S.D. Tex. Dec. 9, 2020) (pay amount due on note). These declarations were deemed

sufficient to establish a genuine issue of fact precluding summary judgment against the plaintiffs.

After careful consideration of these decisions and the instant record, we are convinced that the decisions favorable to the parties seeking redemption—*Houston v. Shear*, *Ther v. U.S. Bank*, and *Suniverse v. Encore Credit*—are materially distinguishable from the instant matter because they hinge on facts not present here. Specifically, in those three cases, the parties seeking to exercise the equitable right of redemption had submitted sworn testimony and/or declarations confirming that those parties were "ready, willing, *and* able" to pay the amounts due.

Here, in contrast, Kafi relies on the declaration of John Kafi, its sole shareholder, President, and CEO, which, in addition to confirming Kafi's and John Kafi's financial ability to pay a redemption amount of $426,472.82, states:

> Kafi, Inc. is ready, able, *or* willing to redeem the Property in controversy by paying off the amount of any valid and subsisting liens to which the Property is subject.

(Emphasis added). In other words, the declaration confirms only that Kafi is ready *or* able *or* willing to pay to redeem the Property. Yet common sense dictates that, in the context of an equitable redemption claim, these three requirements are conjunctive. That is, all three requirements must be satisfied, i.e., Kafi must be ready *and* willing *and* able to pay to redeem the Property.

Applicable case law also supports a determination that these requirements are conjunctive. Indeed, a number of cases unequivocally state these requirements conjunctively. *See, e.g., Kingman Holdings*, No. 3:17-CV-41-M, 2018 WL 3448556, at *3; *Familglia Fatta*, No. 4:18-CV-1147, 2019 WL 3892368, at *4; *Hockessin Holdings, Inc. v. Ocwen Loan Servicing, L.L.C.*, No.

5:15-CV-1103, 2016 WL 247727, at *6 (W.D. Tex. Jan. 19, 2016); *Basil Tr.*, No. 5:15-CV-328, 2016 WL 11578525, at *3; *Post Oak Tr. v. PennyMac Loan Servs., LLC*, 2015 WL 4102163, at *1, 3–4 (E.D. Tex. July 6, 2015).

With others, a closer look is required because some cases recite the requirement disjunctively rather than conjunctively. For instance, the Texas court of appeals' decision in *Scott v. Dorothy B. Schneider Estate Trust*, which was issued in 1990 and is often cited and quoted by federal district courts, states that "the party asserting an equity of redemption must also provide that he is 'ready, able, *or* willing to redeem the properties by paying off the amount of valid and subsisting liens to which the properties [are] subject.'" *See Scott*, 782 S.W.2d at 28 (emphasis added) (quoting *Houston*, 210 S.W. at 981). Significantly, however, as its citation indicates, *Scott* quotes the three requirements—disjunctively—from page 981 of the Texas court of appeals decision in *Houston*. On that page, however, the *Houston* decision simply reports the *district court's* determination that the plaintiff had *not* borne his evidentiary burden, stating:

> The trial court found that appellant was not, at the time of trial, ready, able, *or* willing to redeem the properties in controversy by paying off the amount of valid and subsisting liens to which the properties were subject, and that he had never offered, and did not at the time of trial offer, to pay the amounts necessarily expended by appellees in their necessary preservation.

210 S.W. at 981 (emphasis added). But, as previously discussed, the Texas appellate court *reversed* the district court's determination and remanded the matter for a new trial so that "the ability and good faith of the [plaintiff-appellant] could be authoritatively determined and . . . to accord him the opportunity of payment[.]" *Id*. at 982–83.

No. 24-40167

And, importantly, in explaining its decision, the appellate court determined that the plaintiff-appellant had sufficiently "offer[ed] to pay what is due" based on the allegations in his bill, which stated, in pertinent part:

> [P]laintiff further avers that he is ready, able, *and* willing, and hereby offers, to pay such of said defendants, or their assigns, as upon trial of this cause may be found to be entitled to receive same, the full amount of money which the court may decree that he should be required to pay in order to redeem all of said property from said liens and to have the title thereto vested in him.

*Id.* at 982 (emphasis added). The opinion also quotes the plaintiff-appellant's testimony that "I am now ready *and* able *and* have the ability to pay such amount as may be found due on such items against this property if it is given to me by way of redemption." *Id.* at 981 (emphasis added). In other words, close examination of the *Houston* decision, on which *Scott* relies, reveals that *Scott* mistakenly reports the requirements as disjunctive, rather than conjunctive.

Unfortunately, *Scott*'s error is repeated in several cases, including *Elbar Investments, Inc.*, insofar as the court states, on page 3 of the opinion, that, to enforce an equity of redemption, a party must "prove that he is 'ready, able *or* willing to redeem the properties . . . by paying off the amount of . . . liens to which the properties [are] subject.'" *See Elbar*, No. 14–99–00297–CV, 2003 WL 22176624, at *3 (emphasis added) (quoting *Scott,* 783 S.W.2d at 28 (citing *Houston,* 210 S.W. at 981).[7] But, the *Elbar* court corrects the error on page four of the opinion, stating: "Without showing that it stood

---

[7] Unfortunately, this is also true of a number of other cases quoting *Scott. See, e.g., Green for 2016 Wolf Tr. v. Bank of Am., N.A.*, Civ. Action No. 17-0772, 2017 WL 142332, at *2 (S.D. Tex., Apr. 20, 2017).

ready, willing, *and* able to redeem the property by satisfying the superior lien, Elbar has no equitable right of redemption." *Id.* at *4 (emphasis added).

Considering the instant record in the context of the foregoing authorities, we find no reversible error in the district court's summary judgment dismissal of Kafi's equitable redemption claim. Although we recognize that Kafi's equitable redemption claim (given its coupling with Kafi's claims challenging Wells Fargo's standing to foreclose) has been asserted in the alternative, Kafi's pleading decisions, litigation strategy and/or business judgment do not lessen its substantive evidentiary burdens relative to this equitable remedy. That is, a party seeking to exercise the equitable right of redemption provided by Texas law must establish that the party is ready *and* willing *and* able to pay off the amount of valid and existing liens on the property at issue. Otherwise, that party's entitlement to exercise the equitable right of redemption remains unsubstantiated, and thus fails to satisfy Rule 56's evidentiary requirements. Accordingly, considering Kafi's failure to actually tender the payoff amount prior to the district court's disposition of Wells Fargo's motion *and* the evidentiary shortcomings of John Kafi's declaration, Kafi's evidence falls short of the mark.

Nor are we persuaded that this resolution is inequitable. Rather, Kafi could have preserved its standing challenge while also satisfying its equitable redemption evidentiary burden. At a minimum, Kafi could have proffered a declaration that fully and unequivocally communicated its ability *and* readiness *and* willingness to promptly pay the full amount required to equitably redeem the Property upon the court's determination of Wells Fargo's standing to foreclose. Such clarity is especially important in cases like this one, wherein the party claiming a right to equitable redemption is not the original borrower of the Loan, is not in contractual privity with the Lender, and has not assumed or otherwise promised to pay any outstanding liens of record.

No. 24-40167

Kafi also could have asked the district court to establish a deadline by which it must actually pay the amounts owed in order to preserve its right to equitably redeem the Property. And, in any event, Kafi could have sought to deposit the necessary funds into the court's registry pending a determination of its standing challenges. *See, e.g., Owens v. Bank of Am., N.A.,* No. H-11-CV-2552, 2012 WL 912721, at *1 (S.D. Tex. Mar. 16, 2012) ("[W]ithin the context of the plaintiffs' equitable redemption claim, the plaintiffs must tender the redemption amount . . . either to the defendant or the Court.")

Finally, it is worth noting that Kafi cannot claim ignorance or surprise relative to the district court's determination that it must have "actually tendered" the amount due to Wells Fargo in order for its equitable reformation claim to survive summary judgment. The same is true of our insistence that evidence submitted in support of an equitable redemption claim establish that the redemptor is ready *and* willing *and* able to pay the amount due. Indeed, the district court's ruling on the defendants' motion to dismiss referenced both points. And Wells Fargo's memoranda in support of its motion for summary judgment leave no doubt regarding its position on the issue.[8]

## IV.

Considering the instant record and applicable law, we find no reversible error in the district court's judgment dismissing Kafi's requests for declaratory judgment and to "quiet title" to the Property. The same is

---

[8] For instance, in its original memorandum, Wells Fargo argues: "[A] plaintiff must prove it has met all the requirements of the claim, including that in order to prove it is ready, willing and able to redeem the property, showing it has made a tender of money in the redemption amount." It reiterates this point in its reply memorandum, stating: "To prove that a party is ready, willing, and able to redeem a property requires a party to show it made a tender of money in the redemption amount."

No. 24-40167

true relative to Kafi's alternative claim for equitable redemption. Accordingly, we AFFIRM.